**CARLINGSWITCH, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4873.**

**Court No. 79–12–01947.**

United States Customs Court.

Sept. 18, 1980.

Shaw & Stedina, New York City (Charles P. Deem, New York City, on memorandum), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Jerry P. Wiskin, West Orange, N. J., on memorandum), for defendant.

*On Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and on Plaintiff's Cross–Motion for Summary Judgment*

MALETZ, Judge:

Plaintiff voluntarily tendered $91,992.35 to Customs in connection with a penalty investigation under section 592 of the Tariff Act of 1930, as amended (19 U.S.C. § 1592) for understating the value of certain shipments of switches, indicator lights and related products. Subsequently, Customs refused to refund the monies thus tendered. Plaintiff then brought this action to obtain recovery.

Defendant has moved to dismiss the action or alternatively for summary judgment on the ground that Customs' refusal to refund the monies tendered does not constitute an "exaction" within the meaning of section 514(a)(3) of the Tariff Act of 1930, as amended (19 U.S.C. § 1514(a)(3))[1] and that the court therefore lacks jurisdiction.

Plaintiff, on the other hand, contends that by virtue of sections 520(a)(3) of the

---

1. 19 U.S.C. 1514 reads in part:

(a) Except as provided in section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by American manufacturers, producers, and wholesalers), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to–

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

\* \* \* \* \* \*

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court

Tariff Act of 1930, as amended (19 U.S.C. § 1520(a)(3))[2] and 514(a)(3), Customs' refusal to refund the additional duties thus voluntarily tendered amounts to an "exaction" within the meaning of section 514(a)(3); that the court therefore has jurisdiction; and that plaintiff is entitled to summary judgment on its cross–motion.

For the reasons that follow, the court concludes that the court lacks jurisdiction and therefore dismisses the action.

in accordance with section 2632 of Title 28 within the time prescribed by section 2631 of that title. Also relevant is 28 U.S.C. 1582 which delineates the jurisdiction of the court and provides in part:

(a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: (1) the appraised value of merchandise; (2) the classification and rate and amount of duties chargeable; (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; * * *

**2.** 19 U.S.C. § 1520(a)(3) provides in part:

(a) The Secretary of the Treasury is authorized to refund duties or other receipts in the following cases:

\*    \*    \*    \*    \*    \*

(3) Fines, penalties, and forfeitures. Whenever money has been deposited in the Treasury on account of a fine, penalty, or forfeiture which did not accrue, or which is finally determined to have accrued in an amount less than that so deposited, or which is mitigated to an amount less than that so deposited or is remitted.

**3.** The pertinent provisions of Schedule 8, Part 1, Subpart B of TSUS pertaining to assembled articles read as follows:

*Subpart B headnotes*:

\*    \*    \*    \*    \*    \*

3. *Articles assembled abroad with components produced in the United States.*–The following provisions apply only to item 807.00:

(a) The value of the products of the United States assembled into the imported article shall be–

(i) the cost of such products at the time of the last purchase; or

(ii) if no charge is made, the value of such products at the time of the shipment for exportation,

The facts giving rise to the controversy are undisputed. They are as follows: During the period from July 9, 1970 to January 29, 1974, plaintiff imported switches, indicator lights and other related materials which were assembled in Mexico from United States products. The merchandise was entered as assembled articles under item 807.00 of the Tariff Schedules of the United States (TSUS).[3]

Valuation of assembled articles under item 807.00 is usually on the basis of con-

as set out in the invoice and entry papers; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of such products shall be determined in accordance with section 402 or 402a of this Act.

(b) The duty on the imported article shall be at the rate which would apply to the imported article itself, as an entirety without constructive separation of its components, in its condition as imported if it were not within the purview of this subpart. If the imported article is subject to a specific or compound rate of duty, the total duties shall be reduced in such proportion as the cost or value of such products of the United States bears to the full value of the imported article.

\*    \*    \*    \*    \*    \*

807.00  Articles assembled abroad in whole or in part of products of the United States which were exported for such purpose and which have not been advanced in value or improved in condition abroad by any means other than by the act of assembly  . . . . . .  A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)

structed value or cost of production (19 CFR 10.18). Thus, where an entry is made under item 807.00, cost data for the assembled article and its United States components must be furnished for valuation purposes. If upon entry the costs are estimated by the importer, after entry such estimated costs must be updated and the *actual* costs furnished as soon as possible (19 CFR 10.21). With these considerations in mind, on November 27, 1973, plaintiff submitted actual cost sheets to the Customs Service. The Regulatory Audit Unit of Customs reviewed these cost sheets and concluded on January 17, 1974 that the unit values on the invoices at the time of entry were understated. Shortly thereafter, on February 25, 1974, the entries were liquidated at the entered values.

On May 28, 1974, plaintiff tendered a deposit of $41,992.35 to Customs and on April 23, 1976 tendered an additional deposit of $50,000 to Customs. These tenders in the total amount of $91,992.35 were made by plaintiff on its own initiative and without request or demand by Customs in order to limit its potential penalty liability by complying with the "voluntary disclosure" practice of Customs. More particularly, the tender was made pursuant to an established practice of Customs–that was later embodied in 19 CFR 171.1(a) (effective January 16, 1975)–under which a voluntary disclosure of violations of the Customs laws, accompanied by a deposit of an amount equal to the total loss of revenue to the government will in specified circumstances result in the Customs Service's mitigating the penalty to an amount not exceeding the government's total loss of revenue.

Subsequently, on January 6, 1977, Customs demanded payment of $7,926,778 from plaintiff as forfeiture value on the basis of (1) the undervaluation of the merchandise; (2) false freight figures; and (3) the failure to report the true constructed value figures. In response to this demand for payment, plaintiff, on November 16, 1977, filed a petition under section 618 of the Tariff Act of 1930, as amended (19 U.S.C. § 1618) for remission or mitigation of the claim for forfeiture value. Some 18 months later, on

June 15, 1979, Customs notified plaintiff that although the merchandise was, through false invoices, undervalued in the amount of $174,573.21, the statute of limitations had run on January 28, 1979 on all entries and that the claim for forfeiture value was therefore remitted in its entirety.

On June 29, 1979, plaintiff requested a refund of its deposit of $91,992.35. This request was denied by the district director of Customs on August 6, 1979. In his letter of denial the district director informed plaintiff that although the penalty of $7,926,778 was barred by the statute of limitations, the actual loss of revenue to the government was $174,573.21 and that he assumed that the $91,992.35 had been tendered by plaintiff to cover part of that loss.

On October 22, 1979, plaintiff filed a protest against the refusal to refund the $91,992.35 which protest was denied on December 11, 1979. Suit in this court followed.

■ Against this background, plaintiff argues that section 514(a)(3) should be construed so as to interpret the term "exaction" therein to cover the refusal by Customs to refund the deposits here in issue. However, there are several difficulties with this argument. In the first place, plaintiff's argument is at odds with the plain meaning of the term "exaction." For the following dictionary definitions make clear that an "exaction" is involved only where there is a demand for or the compelling of payment:

*The Random House Dictionary of the English Language* (1969):
exaction–1. the act of exacting; extortion * * *. 2. something exacted * * * a demanding.

The term "exact" is defined as (*ibid*):
exact–* * * 6. to call for, demand, or require * * *. 7. to force or compel payment, yielding, or performance of * *.

*Black's Law Dictionary* (1968):
EXACTION. The wrongful act of an officer or other person in *compelling* payment of a fee or reward for his services,

under color of his official authority, where no payment is due. [Emphasis added.]

*Webster's New Twentieth Century Dictionary of the English Language* (Unabridged, 2d Ed.) (1959):

exaction, n. [L. exactio (–onis), a driving out, expelling, a tax, tribute, from exactus pp. of exigere, to drive out, demand, exact.]

1. an exacting, as of strength, money, time, etc.; the act of demanding with authority and compelling to pay or yield; or levying or drawing from by force; a driving to compliance; as, the *exaction* of tribute or of obedience.

2. an excessive demand; extortion.

3. that which is exacted; an enforced fee, tax, etc.

■ In light of the foregoing definitions, plaintiff's payment of the monies in question voluntarily and without legal obligation or compulsion can hardly constitute an "exaction." At the very least, to constitute an "exaction" under section 514(a)(3) there would have had to have been some compulsion on the part of Customs requiring plaintiff to have paid the monies. That there was no such compulsion here is manifest from the record. Indeed, at the time the tenders were made by plaintiff, no penalty was even asserted against plaintiff let alone any demand for payment.

Nor does the refusal of Customs to refund the monies plaintiff tendered to it constitute an "exaction." As this court stated in *Alberta Gas Chemicals, Inc. v. Blumenthal*, 82 Cust.Ct. 77, 81–2, C.D. 4792, 467 F.Supp. 1245, 1249–50 (1979): "[F]rom a review of a long line of cases involving 'charges' and 'exactions', it is obvious that these terms have been applied to *actual assessments of specific sums of money* (other than ordinary customs duties) on imported merchandise. * * * In the instant case, there has been no assessment of any 'charge' or 'exaction', nor any order or finding entering into a charge or exaction." [Emphasis added.]

The considerations thus set out in *Alberta Gas* are equally applicable here.

■ Plaintiff next argues that the term "exaction" in section 514(a)(3) should be construed broadly so as to cover the refusal by Customs to refund the deposits in issue. Otherwise, plaintiff says, judicial review would be unavailable. In this connection, plaintiff states (correctly) that there is no specific provision for protesting a refusal to refund money deposited in the Treasury on account of a fine, penalty or forfeiture which is subject to remission. However, it maintains that Congress would not enact this statute without providing for judicial review of the correctness of the decisions thereunder. The short answer is that the appropriate district court–and not this court–has jurisdiction under section 592 of the Tariff Act of 1930, as amended (19 U.S.C. § 1592) to judicially review the correctness of the decisions of the Customs Service in penalty cases. See, e. g., *Sheldon & Co. et al. v. United States*, 8 Ct.Cust. Appls. 215, 218, T.D. 37455 (1917); *M.M. Scher & Sons, Inc. v. United States*, 24 Cust.Ct. 243, C.D. 1241 (1950). See also, e. g., Senate Finance Committee Report on H.R. 8149, the Customs Procedural Reform and Simplification Act of 1978 (S.Rep.No. 95–778, 95th Cong., 2d Sess. 17–21, U.S. Code Cong. Admin. News 1978, p. 2211).

In further support of its position that section 514 should be construed broadly to cover the deposits here in issue, plaintiff relies principally on *United States v. C. J. Tower & Sons of Buffalo, Inc.*, 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974). In *Tower* the Court of Customs and Patent Appeals affirmed a decision of this court that the court had jurisdiction of a protest under section 520(c)(1) of the Tariff Act of 1930, as amended (19 U.S.C. § 1520(c)(1)) against refusal to reliquidate to correct a mistake of fact even though section 514 did not specifically refer to a mistake of fact or inadvertence but only to "clerical error." From what has been said, the *Tower* case clearly is irrelevant to any issue here.

■ Finally, plaintiff has moved to amend its complaint to include claims under sections 514(a)(1) and 514(a)(2) of the Tariff

228

Act of 1930, as amended, which sections grant the court jurisdiction of denied protests covering the appraised value of merchandise and the classification and rate and amount of duties chargeable. Leaving aside the question of the timeliness of this motion–which was filed after defendant filed a motion to dismiss and an alternative motion for summary judgment–the case is a penalty case and not an appraisement or classification case. It is true that a penalty case may involve, among other things, questions of appraisement and classification. Such questions, however, must be resolved in the penalty proceeding and not in an appraisement or classification proceeding.

In these circumstances, plaintiff's motion to amend the complaint by having the court treat the action as one for appraisement or classification is denied.

For the foregoing reasons, defendant's motion for summary judgment is granted; plaintiff's cross–motion for summary judgment is denied; and the action is hereby dismissed.