**CARLINGSWITCH, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 80–41.**

United States Court of Customs and Patent Appeals.

June 18, 1981.

Rehearing Denied August 20, 1981.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court (now the United States Court of International Trade) in *Carlingswitch, Inc. v. United States*, 85 Cust.Ct. ——, C.D. 4873, 500 F.Supp. 223 (1980), granting the United States' motion for summary judgment and denying Carlingswitch's cross-motion for summary judgment. We affirm.

This apparently being a case of first impression, we devote substantial discussion to its background and to elucidation of the arguments of both parties.

## Background

Appellant was under investigation in 1974 for allegedly understating the actual costs of certain electrical articles assembled in Mexico from United States products and subsequently imported into the United States. On May 28, 1974, Carlingswitch, through its accountants, voluntarily and without demand paid $41,992.35 to the United States Customs Office in Brownsville, Texas, stating that the funds represented "additional tariff." On April 23, 1976, Carlingswitch, through its attorneys, paid the Customs Service an additional $50,000, designated as "withheld duties," stating:

> This tender is not to be interpreted as an admission that any particular additional duties are due, that fact not having yet been determined by us. Rather, the tender is made in the spirit of demonstrating our client's intentions to cooperate fully with your office with respect to the fulfillment of its recognized obligation under the law to pay appropriate duty on its importations.

The trial court stated it to be "undisputed" that the payments were made pursuant to the Customs Service "voluntary disclosure" practice. That practice, now embodied in 19 CFR 171.1(a), is, briefly, that a voluntary disclosure of violations of the cus-

Charles P. Deem, New York City, for appellant.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Attorney in charge, Jerry P. Wiskin, New York City, for appellee.

toms laws, accompanied by a deposit of an amount equal to the total loss of revenue to the government will, in specified circumstances, result in mitigation of the penalty to an amount not exceeding the government's total loss of revenue.

Customs subsequently completed its investigation of appellant and on January 6, 1977, demanded $7,926,778 as forfeiture value on the basis of (1) the undervaluation of the merchandise; (2) false freight figures; and (3) the failure to report the true constructed value figures. Customs notified appellant on June 15, 1979, however, that the statute of limitations had run and that the claim was remitted in its entirety. Appellant requested a refund on June 29, 1979, of the $91,992.35 it had paid. That request was denied by Customs which stated that although the statute of limitations had run on the claimed money, the actual revenue loss to the government was $174,573.21, and it assumed that appellant's voluntary payments were made to cover part of that loss. Appellant filed a protest on October 22, 1979, against this refusal to refund the money, which protest was denied on December 11, 1979. This suit followed.

### The Trial Court Opinion

Carlingswitch contended below that by virtue of 19 U.S.C. § 1520(a)(3),[1] which relates to refunds, Customs' refusal to refund the monies paid amounted to a "charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3).[2] It further argued that the trial court therefore had jurisdiction over the dispute pursuant to 28 U.S.C. § 1582,[3] and that its cross-motion for summary judgment should be granted. The government, of course, argued otherwise, and had previously moved for summary judgment in its favor.

The motion by the government was granted. In support of its decision that it lacked jurisdiction over the case, the trial court cited a number of dictionary definitions of the word "exaction," concluding that some element of demand or compulsion is necessary for a payment to have been "exacted." The court further noted that past cases have utilized the term only with

1. 19 U.S.C. § 1520(a)(3) provides in part:

(a) The Secretary of the Treasury is authorized to refund duties or other receipts in the following cases:

\* \* \* \* \* \*

(3) Fines, penalties, and forfeitures.— Whenever money has been deposited in the Treasury on account of a fine, penalty, or forfeiture which did not accrue, or which is finally determined to have accrued in an amount less than that so deposited, or which is mitigated to an amount less than that so deposited or is remitted.

2. 19 U.S.C. § 1514 reads in part:

· (a) Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties as defined in section 1677(9)(C), (D), and (E) of this title), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

\* \* \* \* \* \*

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

3. 28 U.S.C. § 1582, which delineates the jurisdiction of the Customs Court (now the Court of International Trade) provides in part:

(a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: (1) the appraised value of merchandise; (2) the classification and rate and amount of duties chargeable; (3) all *charges or exactions* of whatever character within the jurisdiction of the Secretary of the Treasury; \* \*. [Emphasis ours.]

regard "to actual assessments of specific sums of money." *Alberta Gas Chemicals, Inc. v. Blumenthal,* 82 Cust.Ct. 77, 81–2, C.D. 4792, 467 F.Supp. 1245, 1249–50 (1979). Accordingly, the court declined to extend the meaning of the word "exaction" to include a refusal to refund money voluntarily paid. The trial court noted, finally, that an appropriate district court, rather than it, had jurisdiction in this type of case (a "penalty case") pursuant to 19 U.S.C. § 1592, citing *Sheldon & Co. v. United States,* 8 Ct.Cust.App. 215, 218, T.D. 37455 (1917); *M. M. Scher & Sons, Inc. v. United States,* 24 Cust.Ct. 243, C.D. 1241 (1950); and the Senate Finance Committee Report on H.R. 8149, the Customs Procedural Reform and Simplification Act of 1978 (S.Rep.No.95–778, 95th Cong., 2d Sess. 17–21).

### Appellant's Arguments

Appellant states that the only issue before us "is whether protests will lie against an administrative decision under 19 U.S.C. 1520(a)(3)." In support of its case, appellant asserts that the Court of International Trade, rather than "an appropriate district court," has jurisdiction over the case because it is not a "penalty case" as that term is typically employed. The usual penalty case is one brought by the government in a district court pursuant to 19 U.S.C. § 1604 and 28 U.S.C. § 1355 to enforce a claim under 19 U.S.C. § 1592 or some related statute, or a case arising under 19 U.S.C. § 1608. In this case, the penalty has been mooted and there is no issue relating to the merits of the penalty claim.

Appellant contends that the cases cited by the trial court in support of its decision are inapposite. *M. M. Scher & Sons, Inc. v. United States,* supra, it argues, spoke of a "sum arrived at by the Secretary of the Treasury in mitigation of the penalty fixed by law under the provisions of section 592 of the Tariff Act of 1930," clearly not the case here, and jurisdiction was proscribed in *Sheldon & Co. v. United States,* supra, because:

If the moneys received by the collector were paid to him as a representative of the United States attorney, or in compromise of a threatened suit in forfeiture and not in satisfaction of duties or of a customs fee, charge, or exaction, then no relief can be granted the importers in this proceeding * * *.

Thus, the latter opinion also has no relevance, appellant says, because in this case monies were paid in "satisfaction of duties." The Senate Report relied on by the trial court relates, it is said, only to government suits to enforce penalty claims, "i. e., suits relating to the merits of such claims."

Appellant also asserts that "every other decision under 19 USC 1520 is protestable, and it would seem unlikely that the legislature would have intended that only 1520(a)(3) be singled out for denial of review by the [trial court]." Appellant says that § 1514 should be interpreted broadly to cover such a decision "in one or more of its categories. The courts have not hesitated to so interpret section 1514 when justice has required that review be available." *See, e. g., United States v. C. J. Tower & Sons of Buffalo, Inc.,* 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974).

Additionally, appellant argues that, although the trial court felt it was "undisputed," the payment of money was not made pursuant to the "voluntary disclosure" practice. The initial deposit was made only after a Customs audit "disclosed" alleged duty deficiencies and payment was demanded. The second deposit was made after a formal investigation was commenced, thus negating "voluntary disclosure" under the Customs Regulations referenced by the trial court. As further support for this conclusion, appellant notes that there "is nothing in the letters accompanying the deposits reflecting any disclosure of violation of 19 U.S.C. 1592."

In any event, even if the deposits were made pursuant to "voluntary disclosure," appellant contends they were obviously deposited "on account of a [potential] penalty" as contemplated by 19 U.S.C. § 1520(a)(3). Further, since mitigation of a penalty is dependent upon payment of monies, these must be characterized as "exac-

tions." The word "deposited" in § 1520(a)(3) is not qualified and it must be assumed that it refers to *duties* or *other receipts* deposited on account of penalty. Whether that money is voluntarily tendered or exacted is not made a condition therein.

It is also argued by appellant that the deposits in this case may be charged as duties as that term is used in 19 U.S.C. § 1514(a)(2).

Lastly, appellant questions what would happen in a case where money was tendered pursuant to a voluntary disclosure and Customs subsequently found no violation. Does not Customs have the authority to refund the voluntary deposit under 19 U.S.C. § 1520(a)(3)?

### Appellee's Arguments

The government argues that we should adopt the decision of the trial court that a refusal to refund monies voluntarily deposited does not constitute a "charge or exaction" under 19 U.S.C. § 1514(a)(3). In addition to repeating the court's reasoning, appellee states that it has been held that customs duties are outside the scope of § 1514(a)(3) and that a demand for payment of duties found due is not an exaction under which a 1514 protest may be filed. If this is so, then neither can a tender labeled as "withheld duties" be a protestable "exaction."

Further, 19 U.S.C. § 1520(a)(2) specifically provides for refunds of "fees, charges, or exactions, *other than duties and taxes* * *."" Congress thus clearly did not intend that customs duties be considered a charge or exaction. This distinction in § 1520 between duties and charges or exactions should apply with equal force to § 1514.

The government says the inference by appellant that the monies were deposited on the basis of an underlying demand by the Customs Service, i. e., that they were deposited on account of a fine, penalty or forfeiture, is erroneous. In an affidavit, William F. Burns, Director of Classification and Value for the Customs District of Laredo, Texas, stated, "At the time the above monies were tendered, there was no fine, penalty,

or forfeiture asserted against Carlingswitch, Inc., although the question of the proper duties owed by that firm was a matter under investigation over a period of time, resulting in the subsequent assessment of a penalty * * * on January 6, 1977, in the amount of $7,926,778.00." Accordingly, appellee concludes that both payments by appellant were completely voluntary and without demand. The remission of the subsequent penalty did not alter the fact that the payments in issue were tendered as "withheld duties" to ensure that the government was not deprived of its rightful duties, and in no way inferred that Customs believed an underpayment had not occurred.

Additionally, appellee asserts that appellant's characterization of the payments as "duties" constitutes an admission that the payments were not "exactions," "charges" or "money deposited on account of fine, penalty, or forfeiture," although appellant seems to want it both ways. Appellee concludes that:

> In any event, the holding of the trial court that this was a "penalty case" is not crucial to the outcome of this appeal. The holding of the court was essentially the predicate upon which the denial of appellant's motion to amend its complaint was based. It is uncontroverted that appellant's payments were completely voluntary and were made without compulsion. Accordingly, the record supports the finding of the trial court that there was no "exaction" within the meaning of Section 514(a)(3), *supra*. It is thus unnecessary to reach the question as to whether this action was a "penalty case" and whether the Court of International Trade had jurisdiction to hear the action on that ground.

### OPINION

As related above, appellant argues that although this is not "a penalty case," the deposit given the Customs Service was "on account of a potential penalty" and, thus, falls within the type of "money" referred to in 19 U.S.C. § 1520(a)(3). Furthermore, ap-

pellant argues that the *refusal* to refund the deposit, paid "in satisfaction of duties," should be characterized as a "charge or exaction" as those words are used in 19 U.S.C. § 1514(a)(3).

■ We agree with the government that the trial court did not have jurisdiction over this dispute under 28 U.S.C. § 1582(a)(3) (1977). There would be no purpose in restating the rationale, supra, which leads us, as it did the court below, to conclude that a refusal to refund payments (which allegedly should be refunded pursuant to 19 U.S.C. § 1520(a)(3)) does not constitute a "charge or exaction" as that term is used in 19 U.S.C. § 1514(a)(3). *Alberta Gas Chemicals, Inc. v. Blumenthal*, supra.

Appellant alleges it is in dispute whether these payments were made "voluntarily and without demand," a fact the trial court apparently utilized to hold that there was no "charge or exaction." Edward F. Rosenthal, an attorney for appellant, states in an affidavit that the payments were made only after appellant discovered that it was under investigation and entered into "negotiations with [Customs]." It is the *refusal to refund* which appellant alleges to be a "charge or exaction," however, not the two *payments* made to the Customs Service (otherwise appellant would have argued that the money should be refunded pursuant to 19 U.S.C. § 1520(a)(2), which relates to "Fees, charges, and exactions"). That a refusal to refund money is not a § 1514 "charge or exaction" is the basis upon which we affirm the decision granting appellee's motion for summary judgment.

■ Additionally, we disagree with the theory that the payments made by appellant should have been refunded pursuant to 19 U.S.C. § 1520(a)(3). That section refers to monies paid "on account of a fine, penalty, or forfeiture," none of which had been charged against appellant at the time of the payments in question. The monies were deposited as "additional tariff" and as

"withheld duties" to *alleviate* any *potential* penalty. The two concepts are not equivalent.

■ In support of its conclusion that it did not have the authority to hear this dispute, the trial court stated this to be a "penalty case" over which the federal district courts have exclusive jurisdiction, citing 19 U.S.C. § 1592. That section, however, is not a jurisdictional statute and we assume the court was referring to 28 U.S.C. § 1355, which states:

1355. *Fine, penalty or forfeiture*

The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress.

Noting our previous characterization of appellant's payments, we cannot regard these monies as for a "fine, penalty, or forfeiture * * *." Additionally, the Customs Service procedure known as "voluntary disclosure," if that is what appellant's payments may be said to have been paid under, is not one which may properly be labeled as an "Act of Congress."[4]

As a policy matter, appellant posits, "What happens when, for example, the subsequent investigation contemplated by the Regulations results in a determination that no violation has occurred, and no additional duty is due?" In other words, how does one get money back if Customs refuses to refund it?

Notwithstanding that appellant has argued that its payments were *not* pursuant to "voluntary disclosure," it is apparently trying to impress upon us that the decision on appeal may "chill" participation in "voluntary disclosure," thus defeating the public policy behind this procedure, which is to encourage those who have violated the law to disclose such violation and make appropriate restitution to the government. It is

---

4. There is some doubt that these monies were submitted pursuant to the "voluntary disclosure" practice of Customs, for appellant did not accompany its payments with a "voluntary dis-

closure of violations of Customs laws," and both parties acknowledge that appellant was under investigation at the time of the payments. 19 CFR 171 1(a).

true that because the statutory period for collection of the penalty has passed, appellant may not now contest with Customs, *as a defendant*, the correctness of the imposition of that penalty or the underlying undervaluation determination. Our decision, however, is limited to holding that, since appellant's only arguments are that "on account of penalty" in § 1520(a)(3) should be construed to mean "to alleviate any potential penalty," and that the *refusal to refund* monies paid should be characterized as a "charge or exaction" as those terms are used in § 1514(a)(3), with which arguments we disagree, summary judgment was properly entered against appellant by the court below and its judgment is *affirmed*.

*AFFIRMED.*