**PENTAX CORPORATION, a Delaware corporation, Plaintiff,**

v.

**Donald W. MYHRA, in his official capacity as District Director of Customs for the District of Great Falls, Montana, and United States Customs Service, an agency of the United States, Defendants.**

No. CV–92–064–GF.

United States District Court,
D. Montana,
Great Falls Division.

March 14, 1994.

---

John D. Stephenson, Jardine, Stephenson, Blewett & Weaver, PC, Great Falls, MT, Charles H. Bayar, Bayar Law Office, New York City, for Plaintiff.

George F. Darragh, Jr., Office of the U.S. Attorney, Great Falls, MT, Stuart M. Gerson, U.S. Department of Justice—Civil Division, Washington, DC, A. David Lafer, U.S. Department of Justice—Civil Division, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

On January 27, 1994, this court entered an order dismissing an action instituted by Pen-

tax which sought pre-enforcement judicial review of an interim agency decision by the U.S. Customs Service.[1] Pentax intends to appeal the court's decision. Presently before the court is Pentax's motion for injunction pending appeal filed pursuant to Rule 62 Fed.R.Civ.P.[2] Pentax seeks an order barring the expiration of Custom's prior disclosure deadline until the Ninth Circuit reviews this court's January 27, 1994, order.

### BACKGROUND

From 1987 through 1991, Pentax filed documentation with Customs indicating certain photographic equipment was imported from Hong Kong when the country of origin for the merchandise was actually the Peoples Republic of China. In March 1991, Pentax disclosed the country of origin misstatements to Customs. Pentax contends it came forward under the "prior disclosure" provisions of 19 U.S.C. § 1592(c)(4), and therefore is entitled to seek mitigation of any import penalties associated with the country of origin misstatements.[3]

When Pentax disclosed its country of origin misstatements, Don Myhra, Customs District Director for the District of Great Falls, Montana, informed Pentax that unpaid "marking duties"[4] represent an "actual loss

---

1. Pentax sought judicial review of a determination made by Custom's District Director, Don Myhra, that unpaid "marking duties" constitute an "actual loss of duties" which must be paid as a precondition for prior disclosure treatment.

2. Rule 62(c) Fed.R.Civ.P. provides in pertinent part that:

   "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

3. If an importer qualifies for prior disclosure treatment, potential import penalties are calculated under the mitigated penalty provisions in 19 U.S.C. § 1592(c)(4), rather than, the standard penalty provisions set forth in 19 U.S.C. § 1592(c)(1–3). Pentax's penalty exposure under the standard penalty provisions ranges from 3 million to 60 million dollars depending on its degree of culpability (negligence, gross negli-

gence or fraud). Pentax's penalty exposure under the prior disclosure penalty provisions ranges from zero to 6 million dollars.

   In order to secure prior disclosure treatment under 19 U.S.C. § 1592(c)(4) an importer must: 1) voluntarily disclose the country of origin misstatements prior to obtaining any knowledge that Customs commenced a formal investigation into the misstatements; and 2) pay customs the "actual loss of duties" suffered as a result of the misstatements. 19 C.F.R. §§ 162.74(a)(1) & 162.74(h). The phrase "actual loss of duties" is defined in 19 C.F.R. § 162.71(a)(1) as:
   "... the duties of which the government *has been deprived* by reason of the violation in respect of entries on which liquidation had become final."
   Liquidation occurs when Customs makes a final determination on the amount of duties owed on imported merchandise and the merchandise is released for distribution in the United States. 19 C.F.R. § 159.1.

4. Customs is required to collect a ten percent *ad valorem* duty ("marking duty") on imported merchandise entering the commerce of the United

of duties" which must be paid as a precondition for prior disclosure treatment under 19 U.S.C. § 1592. The marking duties calculated by Pentax total $ 5,157,601.30. When Pentax received Mr. Myhra's actual loss of duties determination, Pentax applied for an administrative review.[5] Customs denied the application on the grounds that an actual loss of duties determination is not reviewable.[6] When Pentax requested further discussion on the issue, Customs refused.

Thereafter, on April 20, 1992, Mr. Myhra notified Pentax, by letter, that Pentax had until May 5, 1992, to pay the marking duties if it desired prior disclosure consideration.[7] In lieu of making the payment, Pentax filed an action with this court seeking judicial review of Mr. Myhra's actual loss of duties determination. Pentax premised its request for judicial review upon the Administrative Procedure Act (5 U.S.C. §§ 701–706), in conjunction with the court's federal question jurisdiction (28 U.S.C. § 1331).

■ On April 29, 1992, this court issued an order temporarily restraining Customs from enforcing the prior disclosure deadline set forth in Mr. Myhra's April 20, 1992, letter. Thereafter, Pentax sought an injunction preventing expiration of the May 5, 1992, payment deadline until the court completed its judicial review. In response, Customs filed its own motion urging dismissal of Pentax's action: 1) upon the ground the Court of International Trade ("CIT") had exclusive jurisdiction over this import-related action; or 2) upon the ground that the "actual loss of duties" determination was not a final agency decision under the APA, and an adequate remedy existed in the CIT.[8]

On January 27, 1994, this court granted Custom's motion to dismiss and dissolved the temporary restraining order it had previously issued on April 29, 1992. The court did not rely on either of Custom's arguments in reaching its decision. Instead, the court concluded that a summary dismissal of Pentax's action was proper in light of Congress' clear intent to preclude judicial review of import related issues *under the APA*. The requisite intent to prohibit judicial review is evidenced by the fact that Congress provided (under 19 U.S.C. § 1592), a detailed comprehensive procedural framework for addressing controversies in connection with the imposition of import penalties, including whether marking duties must be paid as a precondition for prior disclosure treatment. The judicial review requested by Pentax would short circuit this statutory procedure.

---

States with false country of origin markings. 19 U.S.C. § 1304.

5. Pentax sought an administrative review of Mr. Myhra's determination that unpaid "marking duties" represent an "actual loss of duties" for prior disclosure purposes. Pentax contends that the phrase "actual loss of duties" refers to the difference between: 1) the true duty liability based upon a true country of origin statement; and 2) the falsely reduced duty liability based upon a country of origin misstatement.

The difference being the amount of money of which the government was *actually deprived* as a result of the country of origin misstatements. 19 C.F.R. § 162.71(a)(1). Pentax contends that no actual loss of duties resulted from Pentax's country of origin misstatements, because the duty liability for camera equipment imported from the Peoples Republic of China is precisely the same as the duty liability for camera equipment imported from Hong Kong.

In the opinion of Pentax, unpaid marking duties do not constitute an "actual loss of duties" because a marking duty is a special *ad valorem* duty that is not lost, but rather, arises as a result of a country of origin misstatement. 19 U.S.C. § 1304.

6. The application was apparently denied by the Director of the International Trade Compliance Division at Customs' Headquarters.

7. If Pentax tendered the marking duties as calculated by Mr. Myrha, the payment is deemed to be voluntary, rather than a charge, and Pentax would be prohibited from protesting or recovering the payment in a CIT action or other judicial proceeding. *Carlingswitch, Inc. v. U.S.*, 85 Cust. Ct. 63, 500 F.Supp. 223 (1980), *aff'd*, 68 C.C.P.A. 49, 651 F.2d 768 (CCPA 1981).

8. 5 U.S.C. § 704 provides in pertinent part that action by an administrative agency, like Customs, is reviewable by a federal district court only if the action is:

> ... *Final agency action* for which there is *no other adequate remedy in a court*....
> (emphasis added).

The requirement of "final agency action" embodies a two-pronged test. (1) The agency action must be a *final decision* rather than a preliminary, procedural or intermediate; and (2) the agency action must be final in the sense that available avenues of review within the agency have been pursued and exhausted.

As a result of the court's ruling on January 27, 1994, Pentax must immediately pay Customs $5.2 million if it wishes to be considered for prior disclosure treatment under 19 U.S.C. § 1592. Pentax presently seeks an injunction staying the prior disclosure payment deadline (originally set for May 5, 1992), pending its appeal of this court's order.

### STANDARD FOR EVALUATING INJUNCTIONS PENDING APPEAL

The parties disagree on the standard for evaluating Pentax's notion for stay pending appeal. Pentax urges the court to adopt the standard set forth by the Ninth Circuit. Customs requests the court to adopt a slightly more stringent standard employed by the U.S. Supreme Court.

To determine whether a motion for stay pending appeal should be granted, the Ninth Circuit applies the same two tests utilized in evaluating a motion for preliminary injunction. *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983), rev'd in part on other grounds, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983). These tests are referred to as the "traditional test" and the "alternate test". Under the traditional test (the more stringent of the two), the moving party must demonstrate that:

1) it will *probably* prevail on the merits;

2) it will suffer irreparable injury if injunctive relief is not granted;

3) balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction; and

4) granting the injunction is in the public interest.

*Martin v. International Olympic Committee,* 740 F.2d 670, 674–75 (9th Cir. 1984)

The alternate test requires the moving party to show:

1) a combination of probable success on the merits and the possibility of irreparable injury; or

2) that serious questions are raised, the balance of hardships tips sharply in the movant's favor and the movant has a fair chance for success on the merits. *Martin,* 740 F.2d at 675.

An injunction may be issued under *either* test. *National Wildlife Federation v. Coston,* 773 F.2d 1513, 1517 (9th Cir.1985)

The standard urged by Customs is described by the United States Supreme Court in *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). In determining whether a stay pending appeal is appropriate, the court considers the following factors:

(1) whether the stay applicant has made a *strong* showing that it will likely succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) whether issuance will advance the public interest.

*Id.* at 776, 107 S.Ct. 2113.

### ANALYSIS

■ In an effort to convince the court that an injunction pending appeal is appropriate, Pentax argues that:

1) it has a strong likelihood of success on appeal;

2) it will be threatened with immediate, irreparable harm if the injunction is not granted;

3) irreparable hardships from denial of the injunction would fall entirely on Pentax; and

4) the public interest favors issuance of an injunction.

Customs challenges each of these arguments, and also argues that an injunction should not be issued because Pentax has not yet filed its notice of appeal.[9]

---

**9.** Customs latter argument is rejected. Case law from other jurisdictions provides that an injunc-

tion pending appeal may be sought before a notice of appeal is filed, "if there is reason to

## A. *Likelihood Pentax will succeed on appeal*

Pentax contends that it will prevail on appeal:

1) because this court's decision is contrary to the Federal Circuit's holding in *Trayco, Incorporated v. United States,* 994 F.2d 832 (Fed.Cir.1993);

2) because this case is not factually distinguishable from *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) [which allowed pre-enforcement judicial review]; and

3) because an *interlocutory judicial review* of Mr. Myhra's "actual loss of duties" determination, will not open the door to piece-meal reviews of other interim agency decisions.

None of these arguments are compelling.

### I. Trayco Decision

■ The Federal Circuit's holding in *Trayco* does not control this case. Although *Trayco* and the present case both involve import penalties, they are distinguishable. In *Trayco,* an importer filed an *action for damages* in federal district court *seeking a refund* of an import penalty it paid to Customs under protest. The district court had subject matter jurisdiction under the Little Tucker Act—28 U.S.C. § 1346(a)(2) [10] in conjunction with 28 U.S.C. § 1331.[11]

■ In the present case, Pentax seeks *judicial review* of an "actual loss of duties" determination made by Customs under 19 U.S.C. § 1592(c)(4). Pentax attempts to invoke this court's subject matter jurisdiction

under the *APA* in conjunction with 28 U.S.C. § 1331. In its January 27, 1994 Order, this court concluded that the requested judicial review did not satisfy the jurisdictional requirements of the APA. Judicial review is not proper under the APA if a statute expressly prohibits judicial review; *or* if a statute provides clear and convincing evidence of a congressional intent to withold judicial review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Under the latter approach, a court can look to:

■ "... the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."

> *Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).

Congress' intent to prohibit the requested judicial review is evidenced by the fact that Congress provided (under 19 U.S.C. § 1592), a detailed and comprehensive procedural framework for addressing controversies in connection with the imposition of import penalties, including whether marking must be paid as a precondition for prior disclosure treatment. The review process embodied in 19 U.S.C. § 1592 consists of a series of administrative reviews culminating with a *de novo* judicial review in the CIT. If a judicial review was allowed at this juncture, it would render the review process in 19 U.S.C. § 1592 meaningless. Pentax fails to present any alternative bases for invoking this court's subject matter jurisdiction.

---

believe that an appeal will be taken." *Lehnert v. Ferris Faculty Assoc.,* 707 F.Supp. 1490 (W.D.Mich.1989); *See, also, Thomas v. City of Evanston,* 636 F.Supp. 587 (N.D.Ill.1986)

**10.** The Little Tucker Act provides that district courts have original jurisdiction, concurrent with the United states Court of Federal Claims, over any civil action against the United States not exceeding $10,000, founded either upon the Constitution, federal statute or regulation of an executive department.

The Little Tucker Act embodies a waiver of sovereign immunity by the United States, and evidences the government's consent to suit in any federal district court to the extent described by the Act.

**11.** The issue raised on appeal was whether the CIT had exclusive jurisdiction over the importer's action because it was related to an import penalty. The *Trayco* court concluded that the CIT did not have exclusive jurisdiction over an action seeking a refund of an import penalty, because such an action was not listed under 28 U.S.C. § 1581.

Section 1581(a)–(i), provides the CIT with exclusive jurisdiction over certain import-related actions filed *against the United States.* If a particular import-related action against the United States is not listed under § 1581, the CIT does not have exclusive jurisdiction. *Trayco,* 994 F.2d 832 (Fed.Cir.1993).

## II. Abbott Decision

In the Court's January 24, Memorandum and Order, the court accurately distinguished the *Abbott* case from the present case. Pentax's argument to the contrary is misplaced.

## III. Appeals from other agency decisions

If judicial review of Mr. Myhra's "actual loss of duties" determination is allowed, it will invite other importers to attempt judicial review of other interim decisions made by Customs, such as: whether an importer qualifies for prior disclosure treatment [12]; whether the importer's violation was the result of negligence, gross negligence or fraud [13]; or whether the importer is entitled to mitigation of the penalties assessed by Customs.[14] Importers challenging these determinations could justify the need for judicial review on the same grounds asserted by Pentax in this case. Namely, if immediate judicial review is not allowed, the importer will be exposed to an unreasonably high penalty assessment, which could lead to the financial demise of the importer's business before the importer could challenge Custom's final penalty determination.[15]

## B. *Harm to Pentax if the Stay Pending Apppeal is not Granted vs. Hardship to Customs if the Stay is Granted*

■ Pentax argues that if its motion to stay is denied, it will suffer an immediate $5.2 million loss, because it will be faced with the following dilemma:

—If Pentax pays the $5.2 million in "actual loss of duties" requested by Pentax for prior disclosure consideration, it cannot recover the money, and it forfeits the legal right to contest the merits of the "actual loss of duties" determination in a future administrative or judicial proceeding. *See, Carling-switch, Inc. v. U.S.,* 85 Cust.Ct. 63, 500 F.Supp. 223 (1980).

—If Pentax refuses to tender the $5.2 million, it will preserve its right to contest the "actual loss of duties" determination—but it will be exposed to much higher "non-disclosure" penalties (ranging from $3 – $60 million).

Customs, on the other hand, argues that if the court grants the injunction sought by Pentax it will be unfairly prejudiced because: 1) Custom's will not be able to conduct a prior disclosure investigation, or make a penalty determination; and 2) Customs will continue to lose the interest on the $5.2 million Pentax should have been paid to Customs on May 5, 1992, (the original date established for Pentax' prior disclosure election).

After careful consideration of this matter, the court does not find it appropriate to grant the specific injunctive relief sought by Pentax because it is unfairly prejudicial to Customs. The court, however, does find it appropriate to craft an injunction that: 1) secures Pentax the right to obtain prior disclosure consideration if it deposits the sum of $5,157,601.30 with the court; [16] and 2) preserves Pentax' right to obtain a judicial determination upon the underlying "loss of duties" issue without exposure to non-disclosure penalties.[17]

---

**12.** After an importer pays Customs the "actual loss of duties" suffered as a result of the import violation, Customs conducts an investigation to determine whether the importer qualifies for prior disclosure treatment ("PDT"). The importer qualifies for PDT only if it reports the import violation prior to Customs commencing an investigation into the violation. If Customs concludes that the importer does not qualify for prior disclosure treatment, the importer will likely seek judicial review.

**13.** The amount of penalty assessed by Customs increases with the degree of culpability. If Customs determines that the violations were the result of conduct other than mere negligence, the importer will likely seek judicial review.

**14.** Customs may mitigate a penalty under the appropriate circumstances. If an importer petitions for mitigation and the petition is denied, the importer may seek judicial review.

**15.** Like Pentax, any importer could argue that the imposition of a pre-penalty notice demanding millions of dollars would likely destroy the importer's credit and discourage lenders from lending funds necessary to sustain the importer's operation.

**16.** When Pentax deposits the sum of $5,157,-601.30 with the court it will effectively "elect" prior disclosure consideration.

**17.** The Ninth Circuit will have to decide whether this court or the CIT has jurisdiction to deter-

Therefore, IT IS HEREBY ORDERED that Pentax shall have until 2:00 P.M. on March 17, 1994, to elect prior disclosure consideration by depositing the sum of $5,157,601.30 in the registry of the court.[18] If Pentax makes the election, the deposit shall be held by the court until the "actual loss of duties" issue is resolved by the appropriate court, and the prevailing party applies to the court for release of the deposit together with accrued interest. An injunction including these terms is fair because:

1) it requires Pentax to make a timely election whether it desires prior disclosure consideration;

2) if Pentax makes the election, it allows Pentax to challenge the "actual loss of duties" determination without risking exposure to higher non-disclosure penalties; and

3) it allows Customs to proceed with its prior disclosure investigation and penalty determination, knowing that if it prevails on the "actual loss of duties" issue, it will receive (the $5.157,601.30 + interest) held by the court.

In the event Pentax elects prior disclosure consideration by depositing the necessary funds, the court shall enter an appropriate injunction.

The Clerk of Court is directed to notify counsel for the respective parties of the entry of this order.

---

mine whether marking duties constitute an actual loss of duties for prior disclosure purposes.

**18.** The court shall deposit the money in an interest bearing account that is mutually agreeable to the parties. In the event the parties are unable to reach an agreement concerning the account in which the money is to be deposited, the court shall select an appropriate account and advise the parties accordingly.