Slip Op. 03-156

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

-------------------------------------------------------X

Brother International Corp.,         :

         Plaintiff,       :

        v.          :      Ct. No. 00-04-00177

United States,        :

         Defendant.     :

-------------------------------------------------------X

[Plaintiff's Motion for Summary Judgment is denied; Defendant's Cross-Motion for Summary Judgment is granted.]

Decided: December 3, 2003

*Barnes, Richardson & Colburn, (Sandra Liss Friedman)*, *Helena D. Sullivan*, for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Assistant Branch Director, International Trade Field Office; *(Amy M. Rubin)*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice; *Yelena Slepak*, Office of Assistant Chief Counsel, United States Customs Service, of Counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

### I. INTRODUCTION

This case presents the court with a familiar dilemma: to what extent can the statutory scheme that currently controls the process of importing goods into the United States accommodate changes in the modern practice of international trade logistics as it develops.

Before the court are the parties' cross-motions for summary judgment.  Plaintiff Brother

International Corporation ("Brother" or "Plaintiff") asks this court to hold that the Bureau of

Customs and Border Protection of the Department of Homeland Security ("Customs" or

"government" or "Defendant")[1] acted improperly in refusing to allow Plaintiff to offset its

overpayment against its underpayment of duties when Plaintiff asked for "prior disclosure"

treatment under 19 U.S.C. § 1592(c)(4).[2]  Accordingly, Plaintiff seeks a refund in the amount of

$172,558.79 that it tendered to Customs upon demand and interest accrued on that amount.  The

government counters that there is no legal basis for permitting such an offset.  The issue in this

case is whether Customs should have allowed Brother to offset its overpayment against its

underpayment with respect to different entries of its merchandise while tendering duties in a prior

disclosure situation.  The court previously took jurisdiction over this matter pursuant to 28

U.S.C. § 1581(a).  *See Brother Intern. Corp. v. United States*, 27 CIT __, 246 F. Supp. 2d 1318

(2003) ("*Brother I*").  For the following reasons, the court will not overturn Customs' refusal to

allow the offset.[3]

---

[1] Formerly, the United States Customs Service.

[2] Subsection 1592(c)(4) ("prior disclosure") constitutes an exception to penalties that an importer would otherwise owe due to fraud or grossly negligent or negligent conduct while entering merchandise into the United States.  In particular, if the importer discloses such conduct prior to and without knowledge of the commencement of a formal investigation, and tenders duties "of which the United States is or may be deprived" because of the violation, it escapes all or a portion of such penalties.

[3] Those familiar with this matter in its entirety will recognize, as does this court, that it has been exceptionally well lawyered throughout.  Nevertheless, the court must interpret the statutory scheme as it is and not as, perhaps, it should be.

## II. BACKGROUND

Plaintiff Brother is the importer of record of the merchandise in question. *Pl.'s Stat. of Material Facts not in Dispute* ("*Pl.'s Facts*") ¶ 1. The merchandise consists of rolls of polyethylene terephthalate ("PET") film sold as refills for printing cartridges used in printers, facsimile and multifunction center machines sold by Brother. *Id.* at ¶ 4. The merchandise entered the United States at the ports of Los Angeles and San Francisco in the period from May 1994 to January 1999. *Id.* at ¶ 5. The merchandise had originally been classified as ribbons similar to typewriter ribbons under subheading 9612.10.1020, HTSUS, or as parts of printers under subheading 8473.30.5000, HTSUS, or as parts of facsimile machines under subheading 8517.90.0800, HTSUS. *Id.* at ¶ 6. In a letter ruling by Customs (NY C82343 dated March 5, 1998), Customs determined that the merchandise was properly classifiable as photographic film under subheading 3702.44.0060, HTSUS (1998), dutiable at 3.7% *ad valorem*. *Id.* ¶ 7; *Def.'s Stat. of Additional Material Facts not in Dispute* ("*Def.'s Facts*") ¶ 2. In December 1998, Plaintiff undertook a review of the entries and realized that its various Customs brokers had at times used incorrect tariff numbers to classify the merchandise and, as a result, duties had been overpaid on some entries and underpaid on other entries. *Aff. of Carolyn Ferrier, Brother's Customs Manager* ("*Ferrier Aff.*") ¶¶ 4, 6. The employee who discovered the misclassifications had been hired by Brother as its Customs Manager on November 9, 1998. *Id.* at ¶ 1. Prior to her tenure, no one at Brother was responsible to conduct post-entry audits such as the one that led to the discovery. *Id.* at ¶ 3.

On December 23, 1998 and later on January 21 and 22, 1999, Brother submitted letters to

Customs informing it of the incorrect classifications and seeking prior disclosure treatment to avoid penalties on underpayments. *Id.* at ¶¶ 9, 10; *Def.'s Facts* ¶ 3. On April 30, 1999, Brother asked Customs to "offset" the overpayments against the underpayments and tendered a check in the amount of $29,125.14 as the *net* amount of duties due. *Pl.'s Facts* ¶ 10; *Def.'s Facts* ¶ 4. On May 5, 1999, Customs informed Brother that it would not allow the requested offset and demanded the remainder of the underpayments, totaling $172, 558.79.[4] *Pl.'s Facts* ¶ 12; *Def.'s Facts* ¶ 5. Specifically, Customs explained:

> Your arguments against U.S. Customs disallowing offsets in prior disclosures have been noted. However, they have not changed our office's position with respect to Section 162.74(c) of the Customs Regulations (19 C.F.R. § 162.74(c) [1999]) which requires that the disclosing party tender any actual loss of duties, taxes and fees either at the time of the claimed prior disclosure, or within 30 days after Customs notifies the person in writing of his or her calculation of the actual loss of duties, taxes and fees. According to 19 C.F.R. § 162.71(a)(1), "actual loss of duties" means the duties of which the Government has been deprived by reason of the violation in respect of entries on which liquidation had become final. Our office maintains that . . . the loss of duties resulting from a violation of 19 U.S.C. § 1592 cannot represent the net difference between overpayments and underpayments relating to the merchandise involved in the violation.

*Letter from Eileen C. McCarthy, Fraud Coordinator, Trade Compliance, U.S. Customs Service to Sandra Liss Friedman, Esq., Barnes, Richardson & Colburn* (dated May 5, 1999) ("May 5 letter") in *Ferrier Aff. Ex.* 4. Customs added, "If the duties requested are not received within 30 days of this letter, Customs will initiate an action to recover the duties and full penalties under 19 U.S.C. § 1592." *Id.* On May 24, 1999, Brother tendered the entire amount, and on July 19, 1999, filed a protest against such payment. *Pl.'s Facts* at ¶¶ 13, 14. On October 22, 1999,

---

[4] Customs calculated the total amount of underpayments as $201,683.93 and subtracted $29,125.14 Brother already paid on April 30, 1999.

Customs denied the protest.[5]  *Id.* at ¶ 15.

### III. Discussion

#### A. *Summary Judgment.*

Summary judgment is appropriate if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  USCIT R. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Here, both parties moved for summary judgment and maintain that there are no genuine issues of material fact to be resolved by a trial.  *Pl.'s Mem. of Law in Supp. of Mot. for Summ. J.* ("*Pl.'s Br.*") at 4; *Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J.* ("*Def.'s Br.*") at 5.  The court agrees and accordingly finds that summary judgment is appropriate in this case.[6]

#### B. *Plaintiff's Contentions.*

Plaintiff Brother presents five substantive arguments in favor of allowing offsets in prior

---

[5] In *Brother I*, denying Customs' contentions, this court determined that there were a valid protest and denial of that protest.  Specifically, the court decided that Customs' demand of the additional amount in the May 5 letter was a protestable action because it constituted a "charge" or "exaction" within the meaning 19 U.S.C. § 1514(a)(3).  *Brother I*, 246 F. Supp. 2d at 1323.  Customs continues to dispute that there was a valid protest and denial of protest in this case, *Def.'s Response to Pl.'s Stat. of Material Facts not in Dispute* ¶¶ 14, 15, while also allowing that the "case is ripe for summary judgment," *Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J.* ("*Def.'s Br.*") at 5.

[6] As mentioned in the preceding footnote, the material dispute as to whether there were a valid protest and denial of protest has already been decided by the court in *Brother I*.

disclosures. First, Brother argues that Customs' refusal to allow an offset is not required by the statute and is solely a policy decision set forth in the Treasury Decision ("T.D.") 79-160, 13 Cust. B. & Dec. 398 (1979), and, therefore, lacks any other legal premise. *Pl.'s Br.* at 5. According to Brother, contrary to the position taken in T.D. 79-160, which rejected offsets in prior disclosures, the legislative history of the Customs Procedure Reform and Simplification Act of 1978, Pub. L. 95-410, ("Simplification Act") shows the clear intention of the Congress to require Customs to "adopt flexible policies which would take into account the totality of an importer's activities." *Id.*; *see also* S. Rep. No. 95-778, *reprinted in* 1978 U.S.C.C.A.N. 2211, 2212 (stating as the objective of the Simplification Act "to permit the establishment of more efficient and flexible procedures" with regard to import transactions). As an example, Brother points to the Senate Report's endorsement of an Automated Merchandise Processing System ("AMPS"), which, had it been adopted, would have allowed importers to make a single payment on various entries and to apply credit balances to amounts due, including penalties.

Further, in its reply, Brother adds that T.D. 79-160 deserves neither the *Skidmore*, nor the *Chevron* deference, as implied by the government's arguments. *Pl.'s Mem. in Opp. to Def.'s Cross-Mot. for Summ. J. and in Reply to Def.'s Mem. in Opp. to Pl.'s Mot. for Summ. J.* ("*Pl.'s Reply*") at 2-7; *see also Skidmore v. Swift*, 323 U.S. 134 (1944); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Brother explains that Customs' position on offsets was never reduced to a regulation, and that the text of the notice of T.D. 79-160 could not constitute sufficient notice on the issue of offsets because it did not mention the issue. *See* 43 Fed. Reg. 53,453, 53,455 (Nov. 16, 1978) (stating that the proposed section 162.71 of the

regulations would define "loss of duties," "actual loss of duties," "potential loss of duties," "noncommercial importation," "clerical error," and "mistake of fact"). Brother further asserts that, even if a type of deference were applicable to T.D. 79-160, the conditions of such deference have not been met under either *Skidmore* or *Chevron*.

Second, Brother maintains that there is no precedent prohibiting the type of offsets requested in this case. *Pl.'s Br.* at 7. To that end, Brother distinguishes this Court's decision in *United States v. Snuggles, Inc.*, 20 CIT 1057, 937 F. Supp. 923 (1996), which rejected offsets, and two subsequent Customs rulings that followed *Snuggles* (HQ 546318 (Dec. 31, 1996) and HQ 547037 (July 12, 1999)). Brother maintains that, unlike here, in these cases either there was no protest, or the case did not involve prior disclosure, or overpayments did not flow from the error that gave rise to the violations. Brother further explains that "[a]llowing an offset in the instant circumstances . . . would not open the floodgates to allow disclosing parties to revisit any errors they have made, since it would be confined to overpayments made in the entries listed in the prior disclosure and arising from the same acts that formed a basis for that disclosure." *Id.* at 10.

Third, Brother points to the Internal Revenue Service's ("IRS") allowance of offsets in similar situations. *Pl.'s Br.* at 10; *see also* 26 U.S.C. § 6402(a) (allowing a "credit [of] the amount of [any] overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax"). According to Brother, methods adopted by a "sister" agency, although not controlling, are relevant to the disposition of a Customs case. Brother implies that the goals of the prior disclosure provision would be better served by allowing offsets

because the provision "is meant to encourage voluntary disclosure and thus ensure that the information received by Customs is accurate." *Id.* at 12.

Fourth, Brother contends that Customs' policy position is in fact inconsistent with important goals of recent and past Customs legislation. *Id.* Brother presents that the main objective of the Customs Modernization and Informed Compliance Act, enacted as Title VI of the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057 (Dec. 8, 1993), ("Mod Act") is to provide incentives to importers to comply with Customs laws and regulations and to voluntarily reveal violations that have occurred. Brother emphasizes that Customs' policy of disallowing offsets would counter this objective by "discourag[ing] importers from coming forward to report violations because they will more likely than not be forced to needlessly tender additional duties that could be offset if only Customs would allow." *Id.* Brother adds that currently Customs allows offsets during the course of a Customs audit pursuant to section 382 of the Trade Act of 2002, Pub. L. No. 107-210, 116 Stat. 933, 992, *codified at* 19 U.S.C. § 1509(b)(6)(A) (2002). Therefore, Brother contends, importers would likely wait for an audit rather than come forward with a prior disclosure as they would receive more favorable treatment during an audit. According to Brother, this "anomalous" result should be avoided.

Fifth, Brother believes that the "essence of the prior disclosure provision is that the disclosing party must reveal the circumstance of the violation, and make the government whole for any losses suffered as a result of its conduct." *Pl.'s Br.* at 15. Brother asserts that in this case, however, Customs would receive a "windfall" because it would not have been entitled to

collect the amounts of underpayments "but for" the revelations of the prior disclosure.  *Id.*

Brother explains that "had Brother's Customs brokers correctly classified the merchandise

covered by the entries listed in that disclosure, Customs would only have received an additional

$29,125.14, an amount undisputed by Brother, not the additional $172,558.79 demanded by

Customs" in the May 5 letter.  *Id.* at 15-16.  Brother concludes that it "should not now be

penalized by being required to submit an extra $172,558.79 that Customs would never have been

entitled to, had these errors not been committed," especially given that Brother acted promptly to

rectify the situation upon learning of the incorrect classifications.  *Id.* at 16.  To support this

argument, Brother relies on *Pentax Corp. v. Robinson*, 125 F.3d 1457 (Fed. Cir. 1997), *amended

on reh'g*, 135 F.3d 760 (Fed. Cir. 1998), and *United States v. Menard*, 16 CIT 410, 795 F. Supp.

1182 (1992), *aff'd in part, vacated in part*, 64 F.3d 678 (Fed. Cir. 1995), which, while factually

different, stand (in the formulation urged by Brother) for the proposition that the government is

entitled to collect only that amount of duties which would make it "whole," and nothing in

excess of that amount.  Brother reiterates that "[i]f the effect of disallowing the offset is to allow

the government to collect an amount over and above that of which it has suffered deprivation,

that charge or exaction is improper." *Pl.'s Reply* at 13-14.

## C.  *Defendant's Contentions*.

The government makes essentially three main arguments in opposition.  First, the

government urges the court to treat separate provisions of the statute separately.  *Def.'s Br.* at 6.

In particular, the government urges that section 1592 of Title 19 of the United States Code,

which includes the prior disclosure provision in subsection (c)(4), relates only to duties of which

the government has been deprived (that is, underpayments) while the refund of overpayments is governed by sections 1514 (providing for the filing of a timely protest within 90 days from the notice of liquidation or the date of protested decision) and 1520(c)(1) (allowing refunds after liquidation due to inadvertent errors within one year of liquidation). *Id.* at 6, 10-12. The government further asserts that "Brother has failed to provide any authority for the proposition that the 'revenue lost' must be a 'net' figure consisting of the total amounts of duties that were underpaid reduced by any amounts that the entity who submitted the false statements overpaid on other transactions." *Def.'s Reply to Pl.'s Response to Def.'s Cross-Mot. for Summ. J.* ("*Def.'s Reply*") at 7. The government believes that a decision in favor of Brother "would eviscerate the provisions of [section] 1592 that permit the assessment of monetary penalties based on the level of culpability." *Id.*

Second, the government argues that a decision in favor of Brother would disturb the finality of the liquidation of Brother's entries. The government explains that, even though the court in *Brother I* had decided that Customs' demand of $172,558.79 constituted a "charge or exaction" within the meaning of subsection 1514(a)(5), "Brother never followed the proper procedures for seeking a refund of any overpayments made at liquidation and, under the plain language of the relevant statute, the liquidations of those entries are now final." *Def.'s Br.* at 13. According to the government, through prior disclosure, Brother attempts "not only to avoid penalties on the numerous entries for which it underpaid duties, but also to recover duties that it overpaid on its now-final entries." *Id.*

Third, the government emphasizes that Brother's overpayments and underpayments were

made on different entries, and not on the same entries. *Id.* at 6, 10. To that end, the government explains that the regulations implementing section 1592 (19 C.F.R. §§ 162.70-162.80), while expressly addressing payments to Customs of the "actual loss of duties" in section 162.71, makes no mention of refund by Customs. *Id.* at 6-7. In fact, the government adds that in T.D. 79-160 Customs rejected that particular interpretation.[7] There, Customs explained that "[a]s stated in proposed section 162.71(a)(1), the term 'actual loss of duties' refers to the duties which the Government is deprived of by a violation in respect of a liquidated entry." T.D. 79-160, 13 Cust. B. & Dec. at 403. While acknowledging that there may not be "actual loss of duties" if there was an overpayment on a particular entry, Customs went on to say that it "does not believe, however, that [the Simplification Act] may be construed as contemplating any reduction in the actual loss of duties on an entry because the violator may have made an erroneous overpayment of duties on *other entries*." *Id.* at 403-4 (emphasis added).

Moreover, the government asserts that "Brother has not explained how offsetting overpayments and underpayments made on different entries months or even years apart furthers" the goal of the Simplification Act "to provide more efficient and flexible procedures for handling customs transactions." *Def.'s Br.* at 8. "On the contrary," the government suggests, "efficiency is much more likely to be achieved by enforcement of specific time limits for finalizing a transaction." *Id.* (emphasis omitted). With respect to the AMPS, the government observes that the system was never adopted and, even if it were, the system would have provided monthly

---

[7] In a footnote, the government adds that because T.D. 79-160 was adopted after notice and comment it should be afforded the *Skidmore* deference suggested in *United States v. Mead Corp.*, 533 U.S. 218 (2001). *Def.'s Br.* at 7 & n.3.

statements on monthly cycles, and would not have allowed offsets on entries that are at times years apart.  *Id.* at 9.

Further, the government refers to the 2002 amendment of section 1509 of Title 19 which now allows offsets in Customs' audits.  Although not entirely clear, the government's argument seems to be that because Congress expressly allowed offsets only in audits, it did not intend the grant to apply to any other situation besides audits.  In a similar vein, the government also argues that because section 1592 is "silent with respect to overpayments," the court "should not read language into a statute without a clear indication of the drafters' intent."  *Id.* at 14 (footnote and citations omitted).  The government adds that Brother failed to show that the drafters intended the prior disclosure provision "to embrace the situation where an importer determines, years after an entry has liquidated and long after the time for filing a protest has passed," that a mistake had occurred.  *Id.* at 15.  The government argues that regardless of Brother's contentions, a decision in Brother's favor would spur more litigation or create a greater administrative burden, and additionally provide an incentive to importers to purposefully underpay on some entries so to take advantage of an offset.

Finally, the government's papers contain multiple references to this Court's decision in *United States v. Snuggles*, 20 CIT 1057, 937 F. Supp. 923 (1996).  The government's main point is that, even though factually different, the *Snuggles* decision is relevant to this case because it reinforced finality of liquidations, *id.* at 17, and that the *Snuggles* plaintiff, like Brother, did not file a timely protest against liquidation of its entries, *id.* at 12.

**D.  *Analysis*.**

This is a case of first impression.[8]  The issue is whether Customs should have allowed

Brother, which sought prior disclosure treatment, to offset its overpayments against its

underpayments with respect to multiple entries of Brother's merchandise.  The court finds that

under the statute Customs was not required to allow the offset advocated by Plaintiff.

Plaintiff's proposed offset of overpayments against underpayments conflicts with the

statutory scheme in the following manner.  First, by asking for an offset, Plaintiff in effect seeks

a refund of overpayments it mistakenly paid to Customs because of the incorrect classification

upon entry of the product at issue.  However, unfortunately for Brother here, there are two

statutory bars to prevent an importer from collecting such a refund from the government.  One

resides in 19 U.S.C. § 1514(a) which provides that a decision of Customs shall be final regarding

the liquidation or reliquidation of an entry unless a protest is filed.  The other bars a refund unless

Customs is alerted to a mistake of fact prior to one year after the date of liquidation.  *See* 19

U.S.C. §1520(c)(1).  In its April 30, 1999 letter tendering the net amount to Customs, Brother

included entries dating back to March 26, 1994.  *Ferrier Aff. Ex.* 3.  Brother failed to protest the

liquidation of any of these entries within 90 days from the notice of liquidation as provided in

subsection 1514(c).  Moreover, by the time Brother asked for an offset, all of the entries for

which there was an overpayment had been liquidated more than a year prior to that date (whether

that date is April 30, 1999, or May 24, 1999 when Brother tendered the additional $172,558.79

---

[8] This Court's decision in *United States v. Snuggles, Inc.*, 20 CIT 1057, 937 F. Supp. 923 (1996), is not directly on point.  In *Snuggles*, the issue of offset involved a single entry and multiple violations, and there was no protest in that case, which was a penalty action brought by the government.

demanded by Customs, or July 19, 1999 when Brother filed a protest).[9]  Under either subsection 1514(a) or 1520(c)(1), Brother is not entitled to a refund on such entries.[10]

The fact that Brother sought the refund in the context of a prior disclosure does not alter this conclusion.  The prior disclosure provision in subsection 1592(c)(4) does not contemplate overpayments or any refund for such overpayments.  Even had Congress provided for offsets under subsection 1592(c)(4), however, it is not entirely clear that the one-year limitation on refunds contained in subsection 1520(c)(1) would have been altered.  When Congress amended section 1509 of Title 19 to allow offsets on multiple entries in Customs' audits, it specifically stated that such a grant should not be "construed to authorize a refund not otherwise authorized under section" 1520.  Trade Act of 2002, §382.  The court is guided by Congress' clear intention to preserve section 1520 (and the one-year time limit on refunds provided therein) for offsets during audits under section 1509, and cannot, therefore, disturb the time limit set out in section 1520 in a prior disclosure case brought under subsection 1592(c)(4).

---

[9] Specifically, the earliest San Francisco entry is dated March 26, 1994, for which Brother overpaid the government $338.37 while the most recent "overpayment" entry at the same port was on June 1, 1997 in the amount of $114.30.   The earliest Los Angeles entry, on the other hand, was on May 20, 1994 with a $1,820.77 overpayment and the most recent was on July 16, 1997, for which overpayment was $679.89.

[10] The court notes, however, that there is no such time limitation on Customs to collect past duties owed, either in section 1592 or in subsection 1505(b), which governs collection or refund of duties, fees, and interest due upon liquidation or reliquidation.  *See also The Communications, Inc. v. United States*, 18 CIT 358, 361 (1994) (observing that subsection 1505(b) does not specify any time limit on the collection of duties).  For similar reasons, Plaintiff's argument that the government should not be able to collect any amount beyond what makes it "whole" fails.  Even though the government would not have been entitled to those duties but for Brother's error, it is nevertheless the case that there is no statutory exception for the factual situation presented here where Brother did not avail itself of relief provided under either 19 U.S.C. § 1514(a) or § 1520(c).

Furthermore, allowing the offset advocated by Plaintiff would undermine the current statutory scheme, which continues to be based on the calculation of duties on discrete entries. Plaintiff urges that multiple entries far apart in time should be treated together and that the payments on those entries should be offset against one another. Yet, there is no basis in the statute or regulations to permit an importer, on its own initiative, to determine which of its entries should be treated together, if any, even allowing that its overpayments and underpayments pertained to the same merchandise and arose from the same violation. In T.D. 79-160, adopted in 1979, Customs announced its policy to disallow offsets on multiple entries in prior disclosures under subsection 1592(c)(4) of the statute and section 162.71 of the regulations. Regardless of whether the government's case here is based on this T.D.,[11] it nevertheless represents a position long held by Customs, which the agency continues to defend before this court. The court is aware of Customs' previously stated intention to switch to an account-based system, which will permit debits and credits on accounts, as part of its modernization efforts,[12] and agrees with Plaintiff that such a system is likely to yield ease of administration and accuracy. However, Customs' adoption of an account-based system must await changes in the statute – changes that may be initiated only in the United States Congress. Without an indication from Congress as to the treatment of multiple entries in a prior disclosure and given the agency's opposition, the court

---

[11] The government explicitly states that its case is not based on T.D. 79-160 and takes no position on the degree of deference owed to this T.D. *See Def.'s Reply* at 2. On the other hand, Plaintiff urges that no deference is owed because the notice announcing T.D. 79-160 did not cover the issue of offsets. Because this decision does not rest on the deference owed to T.D. 79-160, the court need not reach the "notice" issue.

[12] *See, e.g.*, *ACE & Modernization: Overview of Key Features for the Trade*, *available at* http://www.customs.gov.

will not permit an importer to aggregate its entries in the manner requested here.[13]

Moreover, the court disagrees with Plaintiff's arguments that a decision in favor of Customs in this case would erode the goals of the prior disclosure provision. Plaintiff argues that importers are not likely to come forward if they are not allowed an offset in prior disclosures. However, the reason for importers to make use of the prior disclosure provision is to avoid penalties prior to the commencement of a formal investigation regardless of the existence of potential offsets. In fact, an importer that does not reveal an error it discovered and waits for an audit to be performed runs the risk of incurring penalties.[14]

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Cross-Motion for Summary Judgment is granted. A separate judgment will be entered accordingly.

Dated : _____                    _____

        New York, New York                          Judith M. Barzilay

---

[13] For example, the Congress specifically permitted offsets on multiple entries in audits. *See* Trade Act of 2002, § 382; H.R. Conf. Rep. 107-624 (July 26, 2002) (giving an example of offsets on different entries).

[14] For similar reasons, Plaintiff's other policy arguments must fail in the face of statutory requirements. For example, while it may be relevant under certain circumstances, the IRS practices have no direct bearing on Customs' practice given that the two agencies administer two different statutes.