Slip Op. 03-01

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

|  |  |
|---|---|
|  | x |
| BROTHER INTERNATIONAL CORP., | : |
| Plaintiffs, | : |
| | Court No. 00-04-00177 |
| v. | : |
| UNITED STATES, | : |
| Defendant. | : |
|  | x |

[Defendant's Motion to Dismiss for lack of jurisdiction denied.]

Decided: January 2, 2003

*Barnes, Richardson & Colburn, (Sandra Liss Friedman*); *Joseph M. Spraragen*, of Counsel, for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office; *(Amy M. Rubin)*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice; *Yelena Slepak*, Office of Assistant Chief Counsel, United States Customs Service, of Counsel, for Defendant.

**OPINION**

**BARZILAY, JUDGE:**

**I. INTRODUCTION**

On November 25, 2002, the court heard oral argument in this case to consider

Defendant's motion to dismiss for lack of jurisdiction under 28 U.S.C. § 1581(a)(1999).[1]  At the

conclusion of oral argument, the court ruled from the bench denying Defendant's motion.  This

opinion elaborates on the bench ruling.

Plaintiff in this case, Brother International Corporation ("Brother"), filed a complaint on

April 18, 2000, arguing that the United States Customs Service ("Customs") improperly refused

to allow Brother to offset its underpayments of duties against its overpayments of duties when it

sought prior disclosure treatment under 19 U.S.C. § 1592(c)(4).[2]  Defendant Customs argues

---

[1] "The Court of International Trade shall have exclusive jurisdiction of any civil action
commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff
Act of 1930."  28 U.S.C. § 1581(a).

[2] The relevant portions of 19 U.S.C. § 1592(c)(4) states:

> (4) Prior disclosure.
>> If the person concerned discloses the circumstances of a violation of
>> subsection (a) before, or without knowledge of, the commencement of a
>> formal investigation of such violation, with respect to such violation,
>> merchandise shall not be seized and any monetary penalty to be assessed
>> under subsection (c) shall not exceed--
>
>>             . . . .
>
>> (B) if such violation resulted from negligence or gross
>> negligence, the interest . . . on the amount of lawful duties, taxes,
>> and fees of which the United States is or may be deprived so long
>> as such person tenders the unpaid amount of the lawful duties,
>> taxes, and fees at the time of disclosure, or within 30 days (or such

that voluntary payments under § 1592 do not give rise to a protestable event under 19 U.S.C. §

1514(a) and, therefore, Brother is precluded from invoking this Court's jurisdiction pursuant to

28 U.S.C. § 1581(a).  Brother counters that a letter to it from Customs dated May 5, 1999

constitutes a "charge" or "exaction," as enumerated in § 1514(a)(3).  Thus, Brother asserts that

there was a "protestable" act.  *Pl.'s Mem. of Law in Resp. to Def.'s Mot. to Dismiss* ("*Pl.'s Br.*")

at 4.  Customs further states that Brother should have exercised the proper avenue for redress

through the protest of the overpayments when they were liquidated.[3]  The fundamental issue, in

_____

> longer period as the Customs Service may provide) after notice by
> the Customs Service of its calculation of such unpaid amount.

[3] Customs states, specifically, that:

> Brother might have obtained refunds of its overpayments by filing a timely 1514 protest
> against Customs' liquidation of the entries in which there were overpayments.  Brother
> could also have sought relief in an action under 19 U.S.C. § 1520(c)(1) within one year
> of liquidation, if appropriate. Brother could also have raised its "offset" claim as a
> defense in a collection or penalty action.  By electing to make a prior disclosure,
> however, Brother voluntarily subjected itself to all of the requirements of the prior
> disclosure statute,      including paying the actual loss of duty revealed by the disclosure.

*Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss* at 6-7 (footnote omitted).

19 U.S.C. § 1520(c)(1) provides that the Customs Service may

> reliquidate an entry or reconciliation to correct (1) a clerical error, mistake of fact,
> or other inadvertence, whether or not resulting from or contained in electronic
> transmission, not amounting to an error in the construction of a law, adverse to
> the importer and manifest from the record or established by documentary
> evidence, in any entry, liquidation, or other customs transaction, when the error,
> mistake, or inadvertence is brought to the attention of the Customs Service within
> one year after the date of liquidation or exaction.

order to determine if the Court can exercise jurisdiction under § 1581(a), is whether the letter

dated May 5, 1999 was either a charge or an exaction. An affirmative answer would confer

jurisdiction under § 1581(a).

This Court, like all Article III courts, is a court of limited jurisdiction, and once

jurisdiction is challenged a plaintiff must prove that proper jurisdiction exists. *See, e.g.,*

*Dennison Mfg. Co. v. United States*, 12 CIT 1, 3, 678 F. Supp. 894, 896 (1988) (citing *United*

*States v. Gold Mountain Coffee, Ltd.*, 8 CIT 247, 248-49, 597 F. Supp. 510, 513 (1984)).

## II.  BACKGROUND

Brother imports rolls of polyethelene terephthalate ("PET") film that are subsequently

sold as refills for printing cartridges in printers and fax machines marketed by Brother. From

March 1994 through January 1999, Brother entered and classified PET under three different

HTSUS subheadings with various duty rates. *Def.'s Mem. in Supp. of Mot. to Dismiss* ("*Def.'s*

*Br.*") at 2. Customs clarified the status of PET in a March 5, 1998 letter issued by the New

York office, holding the "printing cartridges" were properly classified as "photographic film."

NY C82342. As a result of the prior classifications under three different subheadings and

different duty rates, Brother both overpaid and underpaid duties. To rectify these entries Brother

sought prior disclosure treatment and requested that Customs allow an offset of the amount due.

*Compl.* at ¶ 7. Prior disclosure treatment is provided for at 19 U.S.C. § 1592(c)(4).

On April 30, 1999, Brother requested that Customs allow it to offset the underpayments

against the overpayments and voluntarily tendered $29,125.14, representing the offset amount.

*Compl.* at ¶ 7.  Customs denied that request in its letter dated May 5,1999.  *Id.* at ¶ 8.  Customs

further stated that Brother had to tender the remaining amount of $172,558.79, and, if Brother

did not comply, Customs would commence an action to recover the remaining amount plus

penalties.[4]

On May 24, 1999, Brother tendered the remaining amount, but also protested the

payment and filed a Customs Form 19 requesting further review of the $172,558.79 amount

tendered under 19 U.S.C. § 1592(d).  *Compl.* at ¶¶ 9, 10.  In its reply, dated October 22, 1999,

Customs refused to perform an administrative review pursuant to 19 U.S.C. § 1514 on the basis

that there was no "protestable act."[5]   In support of its decision, Customs declared that its May 5,

1999 letter was not a "charge or exaction" and, therefore, no basis for invoking 19 U.S.C. § 1514

existed since the tender must have been for a charge or exaction to be protestable.[6]

On April 18, 2001, Brother filed a complaint requesting a refund of its overpayment in

---

[4] Customs' letter of May 5, 1999 stated that the Customs' "office maintains that the loss of duties resulting from a violation of 19 U.S.C. § 1592 cannot represent the net difference between overpayments and underpayments relating to the merchandise involved in the violation."  The letter went on to state that a "[d]emand is hereby made for the balance of the actual loss of revenue in the amount of $172,558.79. . . . If the duties requested are not received within 30 days of this letter, Customs will initiate an action to recover the duties and full penalties under 19 U.S.C. § 1592."  The court notes that Customs adheres to the use of the phrase "actual loss of revenue" despite the fact that Brother tendered the full amount of duties owed on those entries where there was overpayment at the time of their liquidation.

[5] The letter stated:  "In the . . . letter dated May 5, 1999, Customs responded that it would not allow offsets for overpayments in its calculation of the loss of revenue and provided notification that the balance of the loss of revenue amounted to $172,558.79.  On May 24, 1999, Brother tendered the balance of the loss of revenue as calculated by Customs in the amount of $172,558.79, therein completing its prior disclosure."

[6] "The May 5, 1999 letter discussed in your submission relates to a voluntary tender made by Brother in order to complete its prior disclosure of a violation of 19 U.S.C. 1592(a)." Customs' Letter of Oct. 22, 1999.

duties and asserting a right to offset its underpayments against its overpayments.  Customs filed

a motion to dismiss for lack of jurisdiction on April 1, 2002, which is at issue in the present

proceeding.

### III.  DISCUSSION

This Court in *Bridalane Fashions, Inc. v. United States*, observed  "[t]he issue of

jurisdiction over cases such as the one at hand and other types of 19 U.S.C. § 1592 penalty and

duty recovery cases is in considerable turmoil."  22 CIT 1064, 1068, 32 F. Supp. 2d 466, 470

(1998).  Plaintiff's case highlights many of the aspects of that turmoil.

A.      Determination of a Protestable Event under § 1514.

Analysis of the question presented by Defendant's motion to dismiss for lack of

jurisdiction begins with detailing the test applied by this Court to determine if a decision by

Customs is protestable.  Under §1514(a)(3) Customs' decisions as to "all charges and exactions

of whatever character within the jurisdiction of the Secretary of the Treasury" are subject to

protest.  No case to date has categorically held that payments under § 1592 cannot be considered

charges or exactions.  Instead, the cases have looked to the specific circumstances of each case to

determine if they meet the requirements of those terms.

The definition of charge or exaction has previously come before this Court.  *See, e.g.,*

*Syva Co. v. United States*, 12 CIT 199, 681 F. Supp. 885 (1988).  "A 'charge' encompasses a

broad range of meanings including: an obligation or duty, a liability, an expense or the price of

an object; an entry in an account of what's due from one party to another."  *Syva*, 681 F. Supp. at

888 (quoting 1 West's *Law & Commercial Dictionary in Five Languages* 237 (1985); *Webster's Third New Int'l Dictionary* 337 (1981); *Black's Law Dictionary* 221 (5th ed. 1979)). "Exaction" has been defined as "the wrongful demand for payment under color of official authority, where no payment is due; an unjust compulsory levy." *Id.* (citing *Webster's* at 377, *Black's* at 500). These definitions are broad in scope, but caselaw has clarified their meanings and indicated what kinds of transactions will not be considered charges or exactions. The question generally turns on whether the payment is truly voluntary.

In *Carlingswitch, Inc. v. United States,* the Customs Court stated that "payment of moneys" without any "legal obligation or compulsion can hardly constitute an 'exaction.'" 500 F. Supp. 223, 227 (Cust. Ct. 1980) *aff'd* 651 F.2d 768 (CCPA 1981). The Court noted that the payments at issue were made voluntarily, during the course of an investigation, before any specific amount had been requested by Customs, and done in a good faith gesture to impact the result of that investigation. *See id.* at 226. At the time the payments were made, Customs had not made any request for payment, or threatened any penalty. Ultimately, Customs found that a penalty should be assessed, but determined that the applicable statute of limitations prevented collection. *Id.* Following the Customs' decision that a penalty could not be pursued, the plaintiff requested a refund of its payments, which Customs refused. The Customs Court held that "refusal of Customs to refund the moneys plaintiff has tendered to it [does not] constitute an exaction." *Id.* at 227. The Court of Customs and Patent Appeals affirmed the Customs Court on this narrow ground: "[t]hat a refusal to refund money is not a 1514 'charge or exaction' is the basis upon which we affirm the decision granting appellee's motion for summary judgment." *Carlingswitch Inc. v. United States*, 651 F.2d 768, 773 (CCPA 1981). The *Carlingswitch* cases

indicate that if money is offered when a penalty remains only a possibility, the transaction cannot be considered a charge or exaction.[7]  In addition, when an importer offers money to mitigate a possible penalty, and no specific amount has been requested, such a payment should be considered a voluntary tender and not a charge or exaction.[8]

This Court in *Tikal Distrib. Corp. v. United States* also found that where money "was tendered voluntarily by Plaintiff on its own initiative and without request or demand by Customs,'" it is not a protestable event.  21 CIT 715, 719, 970 F.Supp. 1056, 1060 (1997) (citing *Carlingswitch*, 500 F. Supp. at 226).  The Court in *Tikal* noted that for voluntary tenders made pursuant to § 1592, "`before, or without knowledge of, the commencement of a formal investigation,'" the statute does not provide a specific avenue of relief.  970 F. Supp. at 1061 (quoting 19 U.S.C. § 1592(c)(4)).  However, the Court in *Tikal* did not rest its decision on the principle that all payments under § 1592 are to be considered voluntary, but rather on a finding that the plaintiff tendered the money as "an act of good faith" in the course of an administrative proceeding to determine if a penalty was in order.  *See id.* at 1060.  The Court further found that Customs made no demand or threat to constitute compulsion.  *Id.*

In *ITT Semiconductors v. United States,* this Court held:

---

[7] Both the appeals court and the Customs Court comment on the unusual nature of the jurisdiction of the Customs Court prior to the 1980 Act, whereby it could hear appeals regarding many Customs matters, but penalty cases were brought before district courts, and were beyond the Customs Court's jurisdiction.  *See Carlingswitch,* 651 F.2d at 773.  The Court of International Trade possesses jurisdiction over penalty cases arising under § 1592.  *See* 28 U.S.C. § 1582.

[8] The CCPA also took note that the plaintiff in *Carlingswitch* was not raising a claim under § 1592 "voluntary disclosure."  Therefore, it did not address the argument that failure to afford judicial review of voluntary disclosure payments would "chill" the provision's effectiveness.  *See id.* at 773.

> Since payment in the case at hand was a means of mitigating a claim and optional on the part of the parties, this court can only conclude that the decision to pay the settlement amount was by the exercise of free will and not by compulsion on the part of the defendant.

6 CIT 231, 237, 576 F. Supp. 641, 646 (1983). The Court in *ITT Semiconductors* was faced with a plaintiff seeking to challenge certain unfavorable elements of a settlement, while retaining the benefit of other elements.[9] The Court found the record to be "replete with facts that demonstrate voluntary behavior." *Id.* at 236. *ITT Semiconductors* affirmed two key elements of the caselaw regarding this issue. First, voluntary payments made within the context of a settlement cannot be considered a charge or exaction. Second, whether a payment is considered voluntary is a determination made looking at the circumstances of the case, and not to be determined by blanket or categorical judgments based merely on the statutory avenue of relief.

Taken together, these cases provide no support for the proposition that, in the circumstances of a prior disclosure under § 1592, a charge or exaction does not exist when the plaintiff pays Customs a specific amount requested or demanded by Customs. On the contrary, where the circumstances of the payment indicated a lack of voluntariness, either due to Customs making the request "under color of official authority" or an imposition of liability, and where the amount paid is not the product of a settlement process, the cases support the proposition that the demand or request may constitute a charge or exaction.

---

[9] Defendant also cites to *Halperin Shipping Co., Inc. v. United States*, 14 CIT 438, 742 F. Supp. 1163 (1990), as supporting its contention that jurisdiction is not appropriate. *Def.'s Br.* at 11. Like *ITT Semiconductors, Halperin* involved a settlement, where the plaintiff attempted to protest its payment of the settlement amount offered by Customs. *Halperin*, 742 F. Supp. at 1167. In *Halperin*, Customs did not assess a specific amount and Halperin was under no compulsion to tender the settlement amount. *Id.*

B.      Brother's payment was protestable.

The court finds that Customs' letter of May 5, 1999 constituted a "charge" or "exaction" pursuant to 19 U.S.C. § 1514(a)(3).  The letter stated that a "[d]emand is hereby made for the balance of the actual loss of revenue in the amount of $172,558.79."  It further threatened that "[i]f the duties requested are not received within 30 days of this letter, Customs will initiate an action to recover the duties and full penalties under 19 U.S.C. § 1592."  If Brother had not complied, it would have been faced with fines well beyond the amount of duties owed.  The record clearly indicates that Brother did not believe it owed the amount requested by Customs. Brother had made an initial payment for an amount it deemed proper.  That offer was rejected by Customs as insufficient, and Customs demanded additional money.  Customs never offered to settle this amount for anything less than the full duties it contended were owed.

Comparison to the cases mentioned above will highlight the different nature of the facts in Brother's case.  In *Carlingswitch*, the Court held that the refusal of Customs to refund payments that should have been refunded did not constitute a "charge" or "exaction" pursuant to 19 U.S.C. § 1514(a)(3).  *See Carlingswitch*, 651 F.2d at 773.  Brother's claim is not that Customs refused to refund monies, but, rather, that the letter of May 5, 1999 amounted to a charge or exaction and, therefore, the actual payment of nearly $173,000 was tendered involuntarily. Further, in *ITT Semiconductors*, this Court found that a payment is not involuntary where it was made in exchange for prior disclosure treatment pursuant to a settlement.  In the present case, this characterizes the initial payment made by Brother.  In contrast, the second payment was clearly made after Customs' letter demanding the full amount be paid, and the only advantage gained by Brother was to lessen the chance of additional penalties.  Furthermore, unlike in

Brother's case, many of the cases cited by Customs involved a negotiated settlement or some

form of settlement discussion.[10]  In the present case, Customs explicitly refused to hold

settlement discussions. Given these circumstances, it is clear that Brother did not tender the

amount voluntarily.[11]

As Plaintiff points out, the facts of this case parallel those in *Trayco, Inc. v. United*

*States*.  *See Pl.'s Br.* at 7 (citing, 994 F.2d 832 (Fed. Cir. 1993)).  In *Trayco,* an importer sought

administrative review of a penalty imposed by Customs for country of origin marking violations.

Trayco disputed that it had committed any violation or owed any penalty.  It paid the mitigated

penalty amount under protest and exhausted administrative remedies.  *See* 994 F.2d at 838.

Trayco claimed the penalty it paid under protest was wrongfully exacted.  *Id.* at 837.  Trayco

filed suit in district court under the so-called "Little Tucker Act," which provides for civil actions

against the United States, for an amount less than $10,000.00, founded upon an Act of Congress.

*Id.* (citing 28 U.S.C. § 1346(a)(2)).  The Federal Circuit found that a district court was the proper

venue for a importer-initiated suit contesting a penalty.  *See id.* at 839.  Brother's case is properly

---

[10] *See Tikal*, 970 F. Supp. at 1058; *Halperin*, 742 F. Supp. at 1164-65; *ITT Semiconductors*, 576 F. Supp. at 645-46.

[11] *Pope Products v. United States*, 15 CIT 279 (1991), also relied on by Defendant, is not applicable.  *Pope* dealt with liquidated damages owed to Customs which the Court held could not be protested.  The Court stated, in dicta, that choosing to seek optional administrative review indicated voluntary behavior on the part of the plaintiff.  Nevertheless, the Court went on to say:

> The voluntariness issue is a close one and need not be resolved here.  Despite whatever compulsion one might perceive stemming from either the original demand in this case or the overall administrative scheme, one cannot denominate the opportunity to pay and obtain administrative review a "charge or exaction" if the original demand itself is not a "charge or exaction."

*Id.* at 285.

addressed to this Court because it involves duties paid under § 1592. *See Pentax Corp v. Robison,* 20 CIT 486, 490-91, 924 F. Supp.193, 197 (1996) *rev'd on other grounds* 125 F.3d 1457 (Fed. Cir. 1997). The venue, however, does not dilute the force of the reasoning the Federal Circuit employed, that an importer does not need to withhold payment and wait for Customs to initiate a suit under 28 U.S.C. § 1582 to seek judicial review of its claim. "Trayco was not estopped from seeking judicial review of the underlying legality of a penalty assessed by the United States Customs Service because it paid the mitigated penalty under protest expressly reserving its rights to judicial review." *Trayco*, 994 F. Supp. at 839. Likewise, Brother may pay the full amount requested by Customs under protest and seek review with this Court. As in *Trayco*, if Customs' demand for the money was improper, and Brother paid with only the additional liability of a penalty suit as a possible avenue of relief, such a payment was an exaction.

Customs maintains that the amount paid by Brother is not a charge or exaction because until it initiates a penalty action with a suit before this Court under 28 U.S.C. § 1582, an importer is under no compulsion to pay the amount requested. Specifically, Customs is contending that when it issues notice of an amount due by a certain date, under the statutory authority it has to collect duties, that such a notice is not a "demand for payment under color of official authority" and that Brother's subsequent payment was a voluntary act free of legal liability and under no duress.[12] The court cannot agree. Customs "official authority" is granted by the statute and

---

[12] It is interesting to note that Customs' characterization of a payment as "voluntary" to avoid judicial review has a long history. In *Elliott v. Swartwout*, the Supreme Court, in 1836, heard a challenge to a case brought by an importer who claimed that he only paid the duties claimed by the port collector of New York in order to secure release of his goods. 35 U.S. 137 (1836). Despite payment, the importer protested the payment and declared his intention to seek recovery.

confirmed by this Court.  *See, e.g., United States v. Menard, Inc*., 16 CIT 410, 415-16, 795 F.

Supp. 1182, 1187 (1992) ("Recognizing that provisions for liquidation and reliquidation were

insufficient to permit the United States to recover revenue lost through culpable acts of

importers, Congress implemented § 1592(d) to remedy the situation.").  Therefore, the court

finds that the letter of May 5, 1999 amounted to a "demand for payment under color of official

authority."

Payment by Brother pursuant to that letter cannot be considered voluntary when non-

payment could have resulted in further penalties, in addition to the disputed amount.  Brother did

not gain any advantage by payment, it only avoided the further liability of a penalty action.

Consequently, Brother's second payment is either a charge or an exaction.  If Brother had a right

to offset its overpayments and underpayments, then the letter is an exaction as a "wrongful

demand for payment under color of official authority, where no payment is due." *Syva*, 681 F.

Supp. at 888.  If Customs is correct that no offset was required, then it is a charge as "an entry in

an account of what's due from one party to another." *Id.*  In either case, it was a protestable

action.

The court is certainly aware that this is an unusual case finding jurisdiction in the context

---

The port collector claimed that he could not be sued for the "wrongful" duties because the importer had voluntarily paid the duties, and the collector had already turned the duties over to the Treasury.  The Court rejected this argument and held a cause of action would lie against the collector when,

> at the time of payment, notice is given to the collector that the duties are
> charged too high, and that the party paying, so paid to get possession of his goods; and
> accompanied by a declaration to the collector, that he intended to sue him to recover back
> the amount erroneously paid, and notice given to him not to pay it over to the treasury.

*Id.* at 156.

of a payment pursuant to § 1592.  However, it is important to recognize that this case did not occur in a vacuum. The nature of how importers and Customs interact has not remained static in the last two decades since the *Carlingswitch* cases.  The modernization of Customs procedures and laws has changed traditional understandings of how to treat entries and file documents.

For two centuries the standard liquidation and protest method characterized Customs practice. Under that system goods were evaluated by a Customs officer prior to release into the stream of commerce.  *See, e.g., United States v. G. Falk & Bro.*, 204 U.S. 143 (1907) (holding duty on imports withdrawn from bonded warehouses must be assessed on the basis of weight at the time of original entry, not as previously provided for at time of withdrawal).  In the last twenty years, Customs has moved away from this labor intensive method towards one of "automatic bypass" where goods are liquidated "as entered" by the importer.[13]  Customs now relies heavily on post-import audits to reconcile mistakes made in the liquidation process.[14]  However, these audits occur months after liquidation has become final and after the time to protest has elapsed for the importer.  In essence, the traditional rule that liquidation is final and binding on both importer and government is no longer true.  Now, in practice, it is only binding on the importer.[15]  If an importer disagrees with the results of the audit, Customs insists that the

---

[13] For a more thorough discussion of this issue see John M. Peterson and John M. Donohue, *Streamlining and Expanding the Court of International Trade's Jurisdiction: Some Modest Proposals*,  presented at the 12th Judicial Conference of the Court of International Trade (November 13, 2002).

[14] *See, e.g.*, Matthew T. McGrath, Robert A. Shapiro, and James B. Doran, *International Legal Developments in Review:1999, Business Regulation: Customs Law*, INTERNATIONAL LAWYER, 376-77 (Summer 2000).

[15] *See* 19 U.S.C. § 1621 providing for a five year statute of limitations on "actions to recover any duty under section 1592(d)."

importer may not challenge that determination.  Instead, Customs contends, as it does in this

case, that the importer must wait for suit to be initiated by Customs and risk additional penalties.

*See Def.'s Br.* at 13.  As Judge Restani pointed out in *Bridalane*:

> The problem here is that plaintiff seeks prior disclosure treatment, but has not
> paid the claimed marking duties to Customs because there is no definitive avenue of
> recovery of the duties if they are wrongfully extracted by Customs and if they are
> considered part of a "voluntary" prior disclosure.  The matter is further complicated by
> Customs' lack of clear regulatory procedures and timetables for protesting post-disclosure
> exactions of duties under 19 U.S.C. § 1592.
> If this matter concerned extracted penalties, the court could say to plaintiffs,
> "Pay the penalties and seek recovery in district court pursuant to *Trayco*, or do not pay
> them and let the Government sue you."  But the issue here is prior disclosure treatment
> and the recovery of *duties*, the essence of this court's jurisdiction.

32 F. Supp. 2d at 469-470 (citations omitted; emphasis in original).

In *Bridalane,* the Court exercised jurisdiction under the residual jurisdiction provided for

in 28 U.S.C. § 1581(i).  The facts of this case point toward a protestable decision, as discussed

above; therefore, the court not need reach the question of whether it could exercise jurisdiction

under § 1581(i) in the alternative.  However, it is clear in light of *Trayco*, *Pentax*, *Bridalane* and

Brother's case before us, these types of situations will arise again.

The court wishes to emphasize that resolving whether Customs' demand was a charge or

exaction is separate from consideration of whether Brother had a substantive right to offset the

amounts in question.[16]  Clearly these are distinct issues.  Finding jurisdiction is predicated on the

---

[16] Pertinent to the question of the right to offset is *United States v. Snuggles Inc.*, 20 CIT 1057,
937 F. Supp. 923 (1996), raised by Defendant during oral argument.  In that case the defendant
sought to offset overpayments with underpayments within the same entry.  The Court was
skeptical of the defendant's argument, but rejected the defendant's claim, at least in part, on the
fact that it did not file a protest.  *See id.*, 937 F. Supp at 929.  The Court in *Snuggles* did not have
to analyze fully the substantive merits of the defendant's claim.  The factual circumstances are
also distinct from the present case; therefore, Snuggles is not dispositive of the question before
this court.  However, it is relevant.

voluntariness *vel non* of the payment. Whether Customs had a right to demand such a payment will hinge on the statutory and regulatory framework in place. The court will, of course, carefully determine whether the statute or congressional intent provides Customs with a directive to allow or refuse offset payments in cases such as these.


## IV. CONCLUSION

For the foregoing reason the court denies Defendant's Motion to Dismiss for Lack of Jurisdiction. The court exercises jurisdiction under 28 U.S.C. § 1581(a), finding that Customs' letter of May 5, 1999 amounted to a demand for payment protestable under 19 U.S.C. § 1514. As directed at oral argument, counsel will confer and schedule a Rule 16 conference with the court.


Dated:_____                                        _____
    New York, NY                                                                Judith M. Barzilay
                                                                         Judge