Slip Op. 06-155

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - -x
                                :
UNITED STATES,                  :
              Plaintiff,        :
                                :
              v.                :   Before: Pogue, Judge
                                :   Court No. 04-00549
ROCKWELL AUTOMATION INC.,       :
                                :
              Defendant.        :
- - - - - - - - - - - - - - - -x
```

[Plaintiff's motion for partial summary judgment granted; Defendant's motions to dismiss and for summary judgment denied.]

Dated: October 18, 2006

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael D. Panzera), Edward Greenwald, Bureau of Customs and Border Protection, of counsel, for the Plaintiff.

Neville Peterson, LLP (John M. Peterson and Curtis W. Knauss) for the Defendant.

## OPINION

**Pogue, Judge**: In this action, the United States Bureau of Customs and Border Protection ("Customs") seeks civil penalties from Rockwell Automation Incorporated ("Rockwell") because of Rockwell's alleged improper entry of merchandise into the U.S. Immediately before the court is Customs' motion for partial summary judgment; in response, Rockwell seeks dismissal, or, in the alternative, summary judgment in its favor. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1582 and 19

U.S.C. § 1592.  For the reasons explained below, the court grants Customs' motion for partial summary judgment and denies Rockwell's motion to dismiss and for summary judgment.

## BACKGROUND

"For two centuries the standard liquidation and protest method characterized Customs practice.  Under that system goods were evaluated by a Customs officer prior to release into the stream of commerce. " Brother Int'l Corp. v. United States, 27 CIT ___,___, 246 F.Supp.2d 1318, 1326 (2003) (citing United States v. G. Falk & Brother, 204 U.S. 143 (1907)).  Over the past twenty years, in order to expedite and streamline the liquidation of entries, "Customs has moved away from this labor intensive method towards one of 'automatic bypass' where [qualifying] goods are liquidated 'as entered' by the importer." Brother Int'l., 27 CIT at ___, 246 F. Supp. 2d at 1326.  This system is designed to save both Customs, and qualifying importers, time and money in the process of liquidating entries.  See G&R Produce Co. v. United States, 27 CIT___, ___, 281 F. Supp. 2d 1323, 1334 (2003).

To qualify for the automatic bypass system, importers must first submit entry summaries to Customs.  Upon review of these summaries, import specialists at Customs designate the classification of the merchandise and approve the merchandise for immediate liquidation processing.  Id. at 1333. Once the

merchandise has been approved for the automatic bypass system, "Customs port directors may liquidate the goods as declared, without inspecting the goods or otherwise independently determining the proper duty to be paid." Motorola, Inc. v. United States, 436 F.3d 1357, 1362 (Fed. Cir. 2006). Nevertheless, to ensure the integrity of this process, Customs conducts periodic audits of importers' entries. See Brother Int'l Corp., 27 CIT at ___, 246 F.Supp.2d at 1326.

Defendant, Rockwell Automation, Inc. ("Rockwell") is a manufacturer, importer and exporter of electrical equipment and supplies who has utilized the automatic by-pass for numerous years. In addition to other products, Rockwell imports short body electric timing relays ("relays"). In 1991, in response to Rockwell's request, Customs issued a ruling classifying the relays. See Customs Letter Ruling, PC 861139 (April 9, 1991), App. Pl.'s Resp. Mot. Summ. J., Docs. 13 ("Pl.'s App. Docs."). Upon examination of Rockwell's description of its merchandise (but never examining a sample of the merchandise), Customs found that Rockwell's 700 HR, 700 HS and 700 HT series of relays were properly classifiable under subheading 8536.49.0075 of the Harmonized Tariff Schedule of the United States ("HTSUS"). The following year, the Customs Area Director at the New York Seaport issued an amended ruling reclassifying the series 700 HR and 700 HT relays under subheading

9107.00.8000, HTSUS.  See NY 861139 (May 21, 1991), Pl.'s App. Docs. 14, 19 ("May ruling").

Displeased with the May ruling, Rockwell contacted Customs to discuss the classification rulings.  Believing its May ruling to be correct, Customs informed Rockwell via telephone in 1991 "that the May ruling was final and binding."  Pl.'s Mot. Partial Summ. J. 4; Record of Telephone Conversation, Pl.'s App. Docs. 21.  Six years later, in October 1997, Rockwell submitted a request for reconsideration regarding the classification of the relays.  Finding its prior decision to be correct, Customs reaffirmed the May ruling.  See HQ 962138 (July 28, 1999)(available at http://rulings.cbp.gov).  In November 2000, Rockwell again repeated its request for Customs to reconsider the classification of its relays, and Customs again sustained its prior ruling.  HQ 964656 (July 23, 2002)(available at http://rulings.cbp.gov).  Despite its displeasure with Customs classification of its 700 HR and 700 HT relays, Rockwell did not protest (in accordance with 19 U.S.C. § 1514) the classification until 2001.

Meanwhile, following issuance of the May ruling, Rockwell began importing 700 HR and 700 HT relays.  During the years in question in this proceeding, Rockwell maintained computerized classification databases which it would submit to its Customhouse broker.  Rockwell's Customshouse broker would, in turn, use the information provided therein to complete entry procedures on

Rockwell's behalf. Although Rockwell claims that it successfully implemented Customs' pre-entry classification ruling (as amended by the May ruling) for all other products (including 700 HS relays), Rockwell did not implement the May ruling for its 700 HR and 700 HT relays.

In 2000-2001, Customs performed a Customs Compliance Audit of Rockwell. During that audit, Customs discovered that Rockwell had designated that certain 700 HR and 700 HT series relays were classifiable under subheadings 8536.49, 8536.41 and 8538.90, HTSUS (rather than subheading 9107.00.80, HTSUS – the subheading set-forth in Customs' May ruling) in entry documents covering 166 entries between April 16, 1996 and January 13, 2000. In addition, Customs discovered that Rockwell did not reference or include a copy of the May ruling with all but two of these entries. During the relevant time periods, the tariff rate of the subheading set forth in the May ruling was higher than the subheadings Rockwell indicated on its entry documents.

Believing that Rockwell's actions violated its entry procedures, Customs initiated administrative proceedings against Rockwell for payment of withheld duties. On August 20, 2002, finding its suspicions confirmed, Customs issued a Penalty Notice to Rockwell. Subsequently, Customs filed a complaint in this court alleging Rockwell violated § 592(a)(1) of the Tariff Act of 1930, as codified 19 U.S.C. § 1592(a)(1). Customs claims that Rockwell

was grossly negligent or, in the alternative, negligent in its completion of Customs' entry procedures.

**Discussion**

In order for Customs "to properly estimate customs duties and otherwise enforce the customs law," the Tariff Act of 1930 ("the Statute") requires importers to disclose certain information upon importation of merchandise into the Commerce of the United States. United States v. R.I.T.A. Organics Inc., 487 F. Supp. 75, 76 (N.D. Ill. 1980); see, e.g., 19 U.S.C. §§ 1481, 1484-87, 1490 (2000); 19 C.F.R. pts. 141-42 (1996).[1] "[T]o encourage the accurate completion of the entry documents upon which Customs must rely to assess duties and administer other customs laws," United States v. F.A.G. Bearings, Ltd., 8 CIT 294, 296, 598 F. Supp. 401, 403-04 (1984) (quoting S. Rep. No. 778, 95th Cong., 2d Sess. 17, as reprinted in 1978 U.S.C.C.A.N. 2211, 2229), the Statute imposes a duty on importers to present true and correct information at entry. See United States v. Ford Motor Co., 29 CIT __, __, 387 F.Supp.2d 1305, 1321 (2005) (citing 19 U.S.C. § 1484(a) & 1485 (1988)). In the event that Customs believes an importer failed to meet its obligations under the Statute, Customs may seek civil penalties under Section 592 of the Statute, as codified at 19 U.S.C. § 1592 (2000) ("Section 592").

---

[1] All references to the Code of Federal Regulations are to the 1996 edition.

Specifically, Section 592 entitles Customs to commence a civil penalty action against any importer who, by "fraud, gross negligence, or negligence,"

> [e]nter[s], introduce[s], or attempt[s] to enter or introduce any merchandise into the commerce of the United States by means of -
> (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
> (ii) any omission which is material...

19 U.S.C. § 1592(a)(1) - (a)(1)(A); see also United States v. Pentax Corp., 23 CIT 668, 670 n.6, 69 F. Supp. 2d 1361, 1364 n.6 (1999). If an importer is found to violate the Statute, Customs may recoup the difference between the duties paid and the "lawful duties, taxes, and fees." 19 U.S.C. § 1592(d). In addition, the court may award additional penalties depending on the level of scienter (fraud, gross negligence or negligence) proved, but not to exceed the domestic value of the merchandise, the amount Customs seeks in its initial pleadings, or the amount the court deems proper and just. See 19 U.S.C. § 1592(c); 28 U.S.C. 2643(e).

Here, the government alleges that Rockwell (a) made false statements in its entry papers and (b) omitted the pre-entry classification ruling it was required to attach on its entry papers. To establish the former count, the government must prove five elements: (1) that Rockwell is among the class of persons subject to liability under section 592; (2) that Rockwell entered, introduced or attempted to introduce merchandise into the commerce

of the United States; (3) that Rockwell made a "false" statement when entering, introducing or attempting to introduce such merchandise into the commerce of the United States; (4) this statement was "material"; and (5) some level of scienter.[2]  To prove the latter count, the government must prove: (i) that Rockwell is among the class of persons subject to liability under section 592; (ii) that Rockwell entered, introduced or attempted to introduce merchandise into the commerce of the United States; (iii) that Rockwell omitted information when entering, introducing or attempting to introduce such merchandise into the commerce of the United States; (iv) that the omission was "material"; and (v) some level of scienter.  See United States v. Pan Pac. Textile Group, Inc., 29 CIT __, __, 395 F.Supp.2d 1244, 1250 (2005).

In its motion for partial summary judgment, Customs requests the court to find that (1) Rockwell made "false" statements on its entry documents, (2) omitted required information on its entry documents, and (3) these statements and omissions were "material." Def.'s Mot. Partial Summ. J. 1.  As noted above, Rockwell responds to Customs' motion, asking that this matter be dismissed; alternatively, Rockwell seeks summary judgment averring that its

---

[2]Section 592(e)(2)-(4) of the Statute assigns the burden on proving scienter depending on the type of scienter being alleged. The government has the burden for all counts alleging fraud or gross negligence; in contrast, for counts alleging negligence, once the government has established the first four elements, the Defendant has "the burden of proof that the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4).

errors were clerical in nature and, therefore, exempted from civil penalty actions.  The court will address each in turn.

**(A) Has the Government Proven as a Matter of Law that Rockwell Introduced Merchandise into the Commerce of the United States By Means of False Statements or Acts?**

Section 592 does not define the term "false" and this court has not specifically addressed the meaning of the term "false" in the Statute.  Therefore, "false" must be defined according to its common and ordinary meaning.  See Perrin v. United States, 444 U.S. 37, 42 (1979).  Black's Law Dictionary defines "false" as something "untrue" or "[n]ot genuine; inauthentic."  Black's Law Dictionary 635 (8th ed. 2004); cf. Koyo Seiko Co. v. United States, 36 F.3d 1565, 1571 n.9 (Fed. Cir. 1994) (using dictionaries to determine the common meaning of a term).  This definition is necessarily contextual, i.e., the inquiry necessarily depends on the facts and circumstances under which a statement is made.

In this case, Customs alleges that Rockwell made "false" statements on entry documents.  The entry of merchandise into the United States is, of course, extensively regulated under U.S. law. As is relevant here, Congress has explicitly delegated to Customs the authority to appraise merchandise, fix the final classification, and determine the amount of duty owed.  19 U.S.C. § 1500 (2000).  In carrying out its responsibilities, "the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of [the

Act]." 19 U.S.C. § 1624 (2000); <u>see also</u> 19 U.S.C. § 1484(a)(2)(A) ("The documentation or information required . . . with respect to any imported merchandise shall be filed or transmitted in such manner and within such time periods as the Secretary shall by regulation prescribe."); 19 U.S.C. § 1502 ("The Secretary of the Treasury shall establish and promulgate such rules and regulations . . . as may be necessary to secure a just, impartial, and uniform appraisement of imported merchandise and the classification and assessment of duties thereon. . . .").

Under the force of this authority, Customs requires importers to specify the appropriate classification for their merchandise on entry documents. When, as here, an importer receives a classification ruling including a pre-entry classification ruling, Customs' regulations further require the importer to "set forth such classification[s] in the documents or information filed in connection with any subsequent entry of that merchandise. . . ." 19 C.F.R. § 177.8(a)(2). Therefore, in circumstances where Customs has issued a pre-entry classification ruling, the question that importers are answering on entry documents is: "What has Customs told you the classification of the merchandise is?" In light of the question posed by Customs, any answer other than that specified in a pre-entry classification ruling must by consequence be "false".[3]

_____

[3] When so framed, on the question of liability under section 592,

(continued...)

In this case, Rockwell received a pre-entry classification ruling specifying that all 700 HR and HT relays must be classified under subheading 9107.00.80, HTSUS. However, Rockwell stated in its entry documents that the relays were classified under subheading 8536.41, 8536.49 or 8538.69 HTSUS. This response, when read in light of Customs' regulation, essentially asserted that Customs had approved use of subheadings 8536.49, 8536.41 and 8538.90, HTSUS to classify the merchandise – a patently "false" statement. Accordingly, these statements are assuredly "false" within the plain meaning of that term.

Faced with the plain language of section 592 and Customs' regulation, Rockwell nevertheless maintains (1) that importers are not bound to make entry of goods in accordance with Customs' rulings (either regular rulings or pre-entry classification

_____

(...continued)
there can be no debate concerning the "correct" classification of the goods. Therefore, even if Customs were to have specified that the relays should be classified under subheading 9801.00.50, HTSUS (covering an "[e]xhibition in connection with any circus or menagerie"), specifying anything other on the entry documents would assuredly be "false." See, e.g., United States v. Golden Ship Trading Co., 25 CIT 40, 45-46 (2001) (finding defendant's reasons for mismarking the country of origin of merchandise on Customs entry papers irrelevant to the false statement inquiry under § 1592). That is not to say, however, that the question of the appropriateness of Customs' classification cannot be considered by the court on the question of the level of the penalty to be imposed. See United States v. Complex Mach. Works Co., 23 CIT 942, 949-50, 83 F.Supp.2d 1307, 1315 (1999) (listing fourteen factors relevant to the imposition of civil penalties, including "the gravity of the violation...").

rulings); (2) the letter in this case is not a valid pre-entry classification ruling letter; and (3) that even if the ruling is valid, it does not cover the merchandise at issue here. None of these defenses is persuasive.

First, Rockwell asserts that under Customs law, only Customs officials are bound by pre-entry classification decisions. Therefore, it asserts, it was not required to set forth such classification in its entry documents. However, as earlier mentioned, Customs' regulations require:

> Any person engaging in a Customs transaction with respect to which <u>a binding tariff classification ruling letter (including pre-entry classification decisions</u>) has been issued under this part shall ascertain that a copy of the ruling letter is attached to the documents filed with the appropriate Customs Service office in connection with that transaction, or shall otherwise indicate with the information filed for that transaction that a ruling has been received. <u>Any person</u> receiving a ruling setting forth the tariff classification of merchandise shall set forth such classification in the documents or information filed in connection with any subsequent entry of that merchandise; the failure to do so may result in a rejection of the entry and the <u>imposition of such penalties</u> as may be appropriate.

19 C.F.R. § 177.8(a)(2) (emphasis added). Generally, a "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Rockwell is most certainly a "person" within the meaning of the regulation. Therefore, 19 C.F.R. § 177.8(a)(2) clearly extends to Rockwell's conduct at issue here. As such, even if it were a general principle of Customs law

that only Customs officials are "bound" by a pre-entry classification decision, that principle does not absolve Rockwell from complying with section 177.8(a)(2) when setting forth the classification of its imports on entry documents.[4]

Next, Rockwell argues that Customs has not issued a "pre-entry classification ruling" for its relays. As noted above, section 177.8(a)(2) requires importers subject to certain rulings to set forth those classifications in their entry documents; among the list of rulings are "pre-entry classification rulings." A pre-entry classification ruling letter "is a letter from Customs to an importer advising the importer of the tariff classifications for certain of the importer's goods before the importer brings them into the country." Motorola, 436 F.3d at 1362; see 19 C.F.R. §§

---

[4] At oral argument, Rockwell claimed that the opportunity provided by Customs' regulations, at 19 C.F.R. § 143.36(c), limits Rockwell's obligation under section 177.8(a)(2). Section 143.36(c), in relevant part, however, merely permits importers to use the ruling number to limit their presentation of invoice data. It does not limit their obligation under section 177.8(a)(2). Rockwell further argued that because section 177.8(a)(2) was promulgated in 1980, the term "pre-entry classification ruling" was not meant to apply to preclassification rulings, such as the one Rockwell received, that were issued pursuant to the program which went into effect on January 1, 1989. A brief review of section 177.8(a)(2), as promulgated in 1980, however, shows that the term "pre-entry classification ruling" was not included in the regulation at that time. 19 C.F.R. § 177.8(a)(2) (1980) ("Any person engaging in a Customs transaction with respect to which a ruling letter has been issued by the Headquarters Office shall ascertain that a copy of the ruling letter is attached to the documents filed in connection with that transaction with the appropriate Customs Service field office."). Consequently, the court finds Rockwell's argument disingenuous at best.

177.1, 177.2(a), 177.2(b)(2)(ii). Customs defines a "ruling" as a written statement "that interprets and applies the provisions of the Customs and related laws to a specific set of facts." 19 C.F.R. § 177.1(d)(1) (emphasis added). Rockwell claims that the pre-entry classification ruling at issue here was not "specific" enough to constitute a "pre-entry classification decision"; in particular, Rockwell avers that the pre-entry classification ruling described only a family of merchandise, i.e., "700 HR" and "700 HT," and that there are factual variations within this family of relays. Rockwell further contends that Customs issued the May ruling without ever viewing an actual sample of the merchandise. Therefore, Rockwell concludes the ruling letter is not "specific" enough to constitute a ruling letter as identified by section 177.8(a)(2). Def.'s Resp. Pl.'s Mot. Summ. J. 15-16 (citing Pac Fung Feather Co. v. United States, 19 CIT 1451, 1456 n.6 (1995) and Pagoda Trading Co. v. United States, 6 CIT 296, 297-98, 577 F. Supp. 2d. 22, 23-24 (1983)). This argument is unavailing.

The specificity requirement of 19 C.F.R. § 177.1(d)(1), and of the cases Rockwell cites, is meant to distinguish rulings letters, on one hand, from regulations and guidelines on the other. Cf. 19 C.F.R. § 177.8(b) (defining other rulings"). Customs' regulations make clear that "rulings" "appl[y] . . . with respect to transactions involving [i] articles identical to the sample submitted with the ruling request or [ii] to articles whose

_description is identical to the description set forth in the ruling letter._" 19 C.F.R. § 177.9(b)(2) (emphasis added). Clearly then, a "description," is plainly sufficient to satisfy the "specificity" requirement. Moreover, when Customs sets forth a "description" of the merchandise, imported articles need not be identical to a "sample", but rather, to a "description."[5]

Applying these principles, and the definition of "ruling," here, Customs (a) issued PC 861139 upon Rockwell's request; (b) addressed particular merchandise imported by a specific importer; (c) reviewed (if even just in a cursory manner) the facts and descriptions concerning that merchandise; (d) did not purport to extend the ruling beyond either those products or to other importers; and (e) clearly set forth the classification of all 700 HR and HT relays. Cf. Pagoda Trading, 6 CIT at 297, 577 F. Supp. at 23 ("The administrative decision complained of did not rule specifically on the merchandise which plaintiff intends to import."); see generally 19 C.F.R. § 177.9(b)(1) ("Each ruling

---

[5]Because there will invariably be some factual differences between various articles an importer imports, whenever Customs issues a pre-entry classification ruling, it must necessarily paint at some level of generality. In determining the proper level of generality, Customs must judge what distinctions between merchandise are material, i.e., what distinctions are relevant to determining the proper classification of the merchandise. This inquiry will necessarily depend on how Customs interprets the competing tariff provisions. To the extent an importer disagrees with Customs' assessment, it may challenge Customs' decision either pre- or post-importation, see 19 U.S.C. § 1514, and seek judicial review of that decision. See 19 U.S.C. § 1515; 28 U.S.C. § 1581(a) & (h).

letter is issued on the assumption that all of the information furnished in connection with the ruling request and incorporated in the ruling letter, either directly, by reference, or by implication, is accurate and complete in every material respect."). These factors clearly demonstrate that Customs had issued Rockwell a pre-entry classification ruling.

Nor can Rockwell maintain that it was not put on notice that it had received a pre-entry classification ruling. The pre-entry classification decision is clearly labeled a "Pre-entry Classification," refers to itself as a "ruling," and advises Rockwell that "[a]s the importer, you agree to enter [merchandise] according to this advice." See Pl.'s App. Docs. 13, PC 861139 (referring to itself as "Pre-entry Classification," and advising the importer of its agreement "to enter according to this advice."); see also Pl.'s App. Docs. 14, NY 861139 (referring to PC 861139 as a "preclassification ruling letter."). Customs issued this letter in response to Rockwell's request for a "pre-entry classification" ruling. Furthermore, Rockwell admits to having received the ruling.

Last, Rockwell claims that Customs has not offered samples of the merchandise to prove that they are "identical to the description" set forth in PC 861139. It is certainly true that the ruling letter applies to 700 HR and 700 HT relays as opposed to 800 HR and 800 HT relays (if such relays exist), and therefore, such

proof is an element of the government's case.  Here, Customs points to entry documents in which <u>Rockwell</u> identifies the merchandise at entry as 700 HR and 700 HT relays.  <u>See</u> Pl.'s Reply Def.'s Resp. Pl.'s Mot. Partial Summ. J. & Pl.'s Resp. Def.'s Mot. Dismiss 10(Pl.'s Reply & Resp.); Attach. A to Pl.'s Reply & Resp. This uncontested evidence, essentially an admission by a party opponent, more than carries Customs' burden.  Because Rockwell has failed to offer a scintilla of evidence challenging the identity of the merchandise, summary judgment on this question is appropriate.  <u>Cf. Saab Cars USA, Inc. v. United States</u>, 434 F.3d 1359, 1368-69 (Fed. Cir. 2006).

Accordingly, for the foregoing reasons, the court finds that, as a matter of law, Rockwell made false statements, and, therefore, Customs is entitled to summary judgment on this question.

**(B) Did Rockwell "omit" information?**

As noted above, 19 C.F.R. § 177.8(a)(2) requires that an importer either (a) attach a ruling letter or otherwise (b) indicate that a ruling letter has been received regarding the transaction.

Customs contends that Rockwell did not attach or otherwise indicate that a pre-entry classification decision had issued with respect to the imports at issue.  This omission, Customs claims, is made more glaring by the fact that "the ruling number appear[ed] on two entries, but not on the other 164 entries at issue." Attach A

to Plt.'s Reply & Resp. 16 (citing Attach A to Plt.'s Reply & Resp.). Rockwell challenges Customs' claims averring that it did "attach" the pre-entry classification ruling by loading the ruling into its database – a database to which Customs officials had access. This, it avers, satisfies its obligations under section 177.8(a)(2).

For summary judgment to be appropriate, Customs – which is not only the moving party but the party who has the burden of proof, see 19 U.S.C. § 1592(e)(3)-(4) – "must . . . satisfy its burden by showing that it is entitled to judgment as a matter of law even in the absence of an adequate response by the nonmovant." Saab Cars USA, 434 F.3d at 1368 (quoting 11 James Wm. Moore et. al., Moore's Federal Practice ¶ 56.13[1] (3d ed. 2005). Here, Customs has met its burden by providing entry documents in which Rockwell did not reference the pre-entry classification ruling. Therefore, as the non-movant, Rockwell is required to provide opposing evidence under Rule 56(e). See Saab Cars; see also USCIT R. 56(e), which states in relevant part that,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

USCIT R. 56(e). Despite its burden, Rockwell has failed to offer any evidence that, for these entries, it loaded the ruling into its database or otherwise made the ruling letter accessible to Customs officials. Having failed to provide any evidence to support its alternative theory, Rockwell has failed to demonstrate a genuine issue of material fact. Accordingly, summary judgment on this question is appropriate.

### (C) Were the "statements" and "omissions" "material"?

An act, statement, or omission is "material," within meaning of section 592, "if it has the natural tendency to influence or is capable of influencing agency action." Pan Pac. Textile Group, 29 CIT at __, 395 F.Supp.2d at 1250 (quoting 19 C.F.R. pt. 171, App. B(B)); United States v. Rockwell Int'l. Corp., 10 CIT 38, 42, 628 F. Supp. 206, 210 (1986) (citations omitted); see generally Kungys v. United States, 485 U.S. 759, 770 (1988). As an objective test, materiality is determined without regard to whether the importer's false statement, false act, or omission actually misled Customs, or whether Customs actually relied on the false statement, false act, or omission. See United States v. Nippon Miniature Bearing Corp., 25 CIT 638, 641, 155 F. Supp. 2d 701, 705 (2001); see also TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976). Furthermore, materiality is a mixed question of law and fact. Consequently, only when an act, statement or omission is "'so obviously important to [Customs], that reasonable minds cannot

differ on the question of materiality' [is the] ultimate issue of materiality appropriately resolved 'as a matter of law' by summary judgment." Id. (quoting Johns Hopkins Univ. v. Hutton, 422 F. 2d 1124, 1129 (4th Cir. 1970)); see also United States v. Tri-State Hosp. Supply Corp., 23 CIT 736, 74 F. Supp. 2d 1311 (1999). See generally Burlington N. & Santa Fe Ry. v. White, 548 U.S. ___, ___, 126 S. Ct. 2405, 2416-18 (2006); United States v. Gaudin, 515 U.S. 506 (1995); M'Lanahan v. Universal Ins. Co., 26 U.S. (1 Pet.) 170, 188-189, 191 (1828).

The relevant facts are undisputed. Rockwell does not contest that it specified subheadings 8536.49, 8536.41 and 8538.90, HTSUS (and not subheading 9107.00.80, HTSUS) on its entry documents. It is also uncontroverted that Customs liquidated the relays under the automatic bypass method. Under this system, Customs liquidated the merchandise "as entered" by Rockwell in their entry documents. Finally, it is also uncontroverted that the liquidation value depends, in part, on the tariff rate corresponding to the proper classification of the merchandise. Because Customs may not review the entries, or conduct a search of its databases to determine the veracity of statements made on entry documents, Rockwell's submissions may have been determinative of the liquidation of its entries. By consequence, the tariff classifications Rockwell submitted would have a natural tendency to (improperly) influence the classification, tariff assessment, of its merchandise (even if,

in rare occasions, Customs affirmatively scrutinized the entry of those imports), with a resulting in a reduction in duty. For the same reason, Rockwell's failure to attach the ruling letter was likewise material. With this analysis in mind, the court finds that reasonable minds cannot differ on the question of materiality and, accordingly, grants Customs summary judgment on this question.

**(D) Is Rockwell Entitled to Summary Judgment that its Errors were Clerical in Nature and Therefore Exempt from Civil Penalty Actions?**

Under section 592(a)(2), "[c]lerical errors or mistakes of fact are not violations of paragraph (1) unless they are part of a pattern of negligent conduct. The mere nonintentional repetition by an electronic system of an initial clerical error does not constitute a pattern of negligent conduct." 19 U.S.C. § 1592(a)(2). Thus, if the entry Rockwell made in its database was a clerical error which was unintentionally propagated by its computers, Rockwell would not be liable under section 592(a)(1) for the false statements and omissions of material fact alleged by Customs.

On this issue, the parties differ most significantly over the inference to be drawn from circumstantial evidence in the record. Rockwell, conceding that its evidence is entirely circumstantial, nonetheless argues that uncontested facts support the conclusion that the incorrect classification in their database is the result of a clerical error. Rockwell admits that "[a]t all times relevant

to this case, the Rockwell parts database showed the classification of '700 HR', '700 HS' and '700HT' series short body timing relays as being HTS subheading 8536.41, and its Customhouse broker entered these products accordingly."  Def.'s Rule 56(I) [sic] Statement Supp. Cross-Mot. Summ. J. ¶ 18.  However, Rockwell claims that "[w]ith the exception of the 700 HR and 700 HT series short body timing relays, the tariff classifications shown in the IPM database matched the classifications assigned by Customs in the Preclassification Ruling and Supplement." Id. at ¶ 28.

To further support its argument, Rockwell points to deposition testimony and company policy as circumstantial evidence that a clerical error is the only explanation for the incorrect classification.  Id. at ¶ 25 (citing Sarauer Dep. & Reuter Dep.) Customs cites the same deposition testimony as evidence that Ms. Sarauer was not responsible for loading results into the database, and argues that the evidence supports a conclusion that no attempt was made to load the correct data into the system.  Pl.'s Resp. Def.'s Mot. Summ. J. 11-12.  Customs' brief rightly points out that there are various conclusions that can be drawn from the evidence proffered by Rockwell.

For purposes of summary judgment, the court draws all inferences against Rockwell, the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Consequently, the evidence submitted does not support a finding that, as a matter of

law, the mis-classification of entries was a clerical error.  The absence of the correct classification from Rockwell's database permits two diametrically opposite inferences; on the one hand, a responsible person could have ordered the correct information omitted; on the other hand, the omission could have been the result of a clerical error.  Accordingly, the court concludes that the circumstantial evidence upon which Rockwell relies does not entitle it to summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, the court **grants** Plaintiff's motion for partial summary judgment and **denies** Defendant's motions to dismiss and for summary judgment.  IT IS SO ORDERED.

The parties shall consult with each other and shall, by November 15, 2006, file a proposed order governing preparation for trial.

Dated:    October 18, 2006
          New York, New York

                                        /s/ Donald C. Pogue
                                       Donald C. Pogue, Judge